**The RED CROSS DRUG COMPANY,
Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**The RED CROSS DRUG COMPANY,
Respondent.**

**Nos. 17387, 17471.**

United States Court of Appeals
Seventh Circuit.

Dec. 23, 1969.

---

Gilbert E. Brach and Fred W. Wheeler, Racine, Wis., for Red Cross; Brach & Wheeler, Racine, Wis., of counsel.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Eugene B. Granof, Michael F. Rosenblum, Attys., N.L.R.B., Washington, D. C., for N.L.R.B.

Before MAJOR, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Case No. 17471 (Red Cross I) is before this court upon the petition of the National Labor Relations Board (Board) for enforcement of its order issued against the Red Cross Drug Company to remedy violations of §§ 8(a) (1), 8(a) (3) and 8(a) (5) of the National Labor Relations Act (Act). Case No. 17387 (Red Cross II) is before this court upon

the petition of the Red Cross Drug Company to review and set aside an order of the Board. The Board filed a cross-application for enforcement of its order to remedy §§ 8(a) (5) and 8(a) (1) violations of the Act. On March 14, 1969, this court, at the request of the parties, consolidated Red Cross I and Red Cross II for the purposes of briefing and oral argument.

The Red Cross Drug Company (Company) operates a chain of five retail drug stores in Racine, Wisconsin.[1] The alleged unfair labor practices which are the subject of the Board's order in Red Cross I and II all occurred at the Washington Avenue store.

In January, 1967, the Retail Clerks Union Local No. 1403, AFL–CIO, Retail Clerks International Association, AFL–CIO (Union) began to organize the Washington Avenue store's twelve employees, and by January 20 had obtained signed authorization cards from nine of the employees. Accordingly, on that day the Union notified the Company by mail that it represented a majority of the employees. The Union requested recognition and suggested a date for a meeting to begin negotiations. In response to a Company letter refusing to attend the meeting because it had no knowledge of any union organization, the Union reiterated its bargaining demand and sent the Company copies of nine authorization cards. The Company never replied to this letter.

The Union filed a certification petition with the Board on February 13, 1967, seeking to represent the employees in the Washington Avenue store. Although the Company again refused a Union bargaining request on the basis of the nine authorization cards, it did sign, along with the Union, a stipulation for a Board consent election to be held in a unit comprised of the Washington Avenue store employees. The scheduled election was subsequently postponed

when the Union filed unfair labor practice charges against the Company on March 8. Amended charges were filed on April 5 and on that same date, the election petition was withdrawn by the Union with the approval of the Regional Director.

On February 2, 1968, the Board, adopting the trial examiner's decision, found in Red Cross I that between the time of the Union's bargaining demand and the date of the scheduled election, the Company committed §§ 8(a) (1), 8(a) (3) and 8(a) (5) violations. The Board found that the Company violated § 8(a) (1) of the Act by interrogating and threatening employees and further, making promises of benefits to employees who did not join the Union. In addition, the Board found that the alteration of the employees' work schedule and specifically of one employee, Doris Hougan, scheduling her for hours which would force her to terminate her employment, violated § 8(a) (3) and (1) of the Act. Finally, the Board found the Company refused to recognize and bargain with the Union in violation of § 8 (a) (5).

Previous to the Board's adoption of the trial examiner's decision in Red Cross I, the Company on November 2, 1967, closed its Washington Avenue store without notifying the Union or employees of this decision. The closing of the Washington Avenue store was the subject of the unfair labor practice complaint filed in Red Cross II. In Red Cross II, the Board, adopting the trial examiner's opinion, found that the Company violated § 8(a) (5) of the Act by closing its Washington Avenue store without notifying the Union and giving it the opportunity to bargain about the decision to close as well as the effect of the closing.

In Red Cross I and II the Board ordered the Company to cease and desist from the unfair labor practices found.

---

1. During 1966, the respondent's sales in all its retail stores were in excess of $500,000. During the same period, the respondent purchased goods and materials, valued in excess of $50,000, from points outside the State of Wisconsin.

Affirmatively, in Red Cross I, the Board ordered the Company to offer Doris Hougan reinstatement and to make her whole for the losses she had suffered as a result of the discrimination. In addition, the Company was ordered to bargain collectively with the Union upon request. In Red Cross II, the Company was ordered to bargain collectively with the Union concerning the decision to close and the possible reopening of the Washington Avenue store and about the effect of the closing on the employees. The Board also ordered the Company to make whole the employees of the Washington Avenue store for any loss of pay they may have suffered because of the unfair labor practice.[2] In both cases, the Company was ordered to post the appropriate notices.

On appeal to this court the respondent Company does not challenge the correctness of the Board's findings as to the commission of §§ 8(a) (1), 8(a) (3) and 8(a) (5) violations in Red Cross I. Instead, the Company challenges the Board's decision to exercise jurisdiction and the Board's use of the Washington Avenue store as the appropriate bargaining unit pursuant to § 9(b) of the Act. As to Red Cross II, the Company challenges the Board's finding that it was required to bargain with the Union about the closing of its Washington Avenue store and the effects of such closing.

## JURISDICTIONAL CHALLENGE

Respondent contends that because the alleged unfair labor practices involved only its Washington Avenue store, the Board was not entitled to aggregate the revenue from all five of the Company's stores to meet the $500,000 volume standard which the Board has placed upon itself as a minimum for exercising jurisdiction. *See* Carolina Supplies and Cement Co., 122 N.L.R.B. 88, 89 (1958).

The Company, however, did not raise the issue, or otherwise question the Board's assertion of jurisdiction in any of the proceedings below. Section 10(e) of the Act provides in relevant part:

No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.

The Company has not shown that there were any "extraordinary circumstances" here which excused its failure to present the jurisdictional contention to the Board. Consequently, since it was not raised below, we find that the Company is estopped from raising this contention before this court. *See e. g.* N. L. R. B. v. Ochoa Fertilizer Co., 368 U.S. 318, 322, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961). Even in the absence of the barring provision of § 10(e), the Company's contention on the merits is unsupportable. In creating its $500,000 gross volume limitation for retail enterprise, the Board made clear that it would "apply this standard to the total operations of an enterprise whether it consists of one or more establishments or locations and whether it operates in one or more States." Carolina Supplies and Cement Co., 122 N.L.R.B. 88, 89 (1958).

## APPROPRIATENESS OF BARGAINING UNIT

The Company also argues before this court that the Washington Avenue store was not an appropriate unit for bargaining and that the appropriate unit should have consisted of all the employees in the Company's five stores. We find, however, that the Company is estopped from raising this argument.

The complaint in Red Cross I alleged the Washington Avenue store to be the

2. The Board provided that the backpay liability terminated upon the occurrence of any of the following conditions: (1) reinstatement; (2) reaching mutual agreement with the Union; (3) bargaining to an impasse; (4) failure of the Union to bargain within five days of its receipt of the Company's notice of its willingness to bargain; (5) failure of the Union to bargain in good faith.

appropriate bargaining unit. The Company's answer admitted the allegation and the trial examiner found the Washington Avenue store to be the appropriate bargaining unit within the meaning of § 9(b) of the Act. It should also be noted that when the Union filed its representation petition, previous to the filing of the unfair labor practice charges, the Company, in entering into a stipulation for certification upon consent election, agreed that the Washington Avenue store was the appropriate unit.

■ In addition, when the Board adopted the trial examiner's findings in Red Cross I, the Company did not raise the issue of the appropriateness of the bargaining unit in its exceptions to the Board's findings as required by § 10(e) of the Act in order that such findings be reviewable. Although the Company raised the issue of appropriateness as an exception to the Board's decision in Red Cross II,[3] we find that in the absence of any change of circumstances, the unchallenged Board's determination of the bargaining unit in Red Cross I is final and binding on the Company. Since this unit determination was stipulated to for the purpose of an election, and was not excepted to in Red Cross I, § 10(e) precludes our reviewing it.

## BARGAINING ORDER CONCERNING CLOSING OF WASHINGTON AVENUE STORE AND ITS EFFECTS

The Company's last contention on appeal is that the Board's finding that the Company violated § 8(a) (5) by failing to bargain with the Union about closing and the effects of closing its Washington Avenue store and the Board's affirmative order requiring the Company to bargain about closing and possible reopening and the effects of closing, was in error.

■ In Red Cross II, the Company raised only one specific exception to the Board's findings and order concerning the § 8(a) (5) violation. Without challenging the Board's conclusion that the Company had a duty under § 8(a) (5) to bargain with the Union about the effects of the closing, the Company contended that it was only notified of the trial examiner's finding in Red Cross I that the Washington Avenue store constituted an appropriate unit on October 22, 1967, ten days prior to the closing of the store. Consequently, if the Company had bargained with the Union it would have been unable to close the store for several months, thus constituting an additional substantial loss. This contention, however, has no merit. The Company's bargaining obligation arose in January, 1967, when it unlawfully refused the Union's request for recognition, not nine months later when the trial examiner issued findings to that effect. *Cf.* N. L. R. B. v. DuBo Manufacturing Corporation, 353 F.2d 157, 161 (6th Cir. 1965).

■ The other contentions raised by the Company on appeal, that it had no duty to bargain about the closing of its Washington Avenue store and the effects of such closing and the propriety of the Board's affirmative bargaining order were not raised by the Company's exceptions to the Board's decision in Red Cross II, and, therefore, are precluded from being raised by § 10(e).[4]

For the foregoing reasons, enforcement of the Board's order is granted.

Enforcement granted.

---

**3.** It should be noted, however, that the issue of the appropriateness of the bargaining unit was not raised to the trial examiner at any time in Red Cross II. In addition, the Company specifically indicated before the trial examiner that it did not intend to relitigate the question.

**4.** Since we are not faced with the issue we express no opinion as to the novel contention by the Board that the Company in fact has an affirmative duty to not only bargain about the effects of closing a store but also to bargain about the actual decision to close.