**BAKER CANNING COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 73–2010.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 1974.

Decided Nov. 8, 1974.

Leonard Singer, Kansas City, Mo., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Bert Bisgyer, Atty., N. L. R. B., Washington, D. C., for respondent.

Before HASTINGS, Senior Circuit Judge, and LAY* and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioner Baker Canning Company grows, processes and packages vegetables in Theresa, Wisconsin. Baker has asked us to set aside an order of the National Labor Relations Board requiring it to bargain collectively with the Union[1] (206 NLRB No. 97). The Board has filed a cross-application for enforcement.

On September 15, 1972, the Board conducted a secret ballot election to decide whether the employees at Baker's plant wished to be represented by the Union. The Union won the election. Four days thereafter, Baker filed an objection alleging that between 7:00 a. m. and 8:30 a. m. on the election day the Union distributed a handbill to Baker employees containing "false and misleading statements concerning contracts which Petitioner [the Union] has obtained with one of the Employer's competitors." The handbill is reproduced as the Appendix to this opinion. Baker alleged that due to the timing of the distribution of the handbill it was unable to refute the statements contained therein and that, therefore, the handbill tainted the election.

After investigating the issues raised by Baker's objection, the Regional Director filed a report recommending that the Board certify the Union as the

---

* Circuit Judge Donald P. Lay of the Eighth Circuit is sitting by designation.

1. Drivers, Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Employees and Helpers Union Local 695, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

exclusive representative of Baker's employees in the unit involved. He concluded that the information on the handbill was correct in that it set forth "the existing wage rates of the employees of California Canners and Growers, and the reference to the general or starting wage rates for both California Canners and Growers and the Employer [Baker] are accurate." He also found that the Union's handbill did not contain "a misrepresentation sufficient to warrant setting aside the election" and that "the contents of the handbill did not contain departures from the truth." Subsequently, the Board adopted the Regional Director's findings and added that the handbill "does not contain any statements which the employees were unable to evaluate."

Thereafter, Baker refused to bargain with the Union, resulting in an unfair labor practice charge being placed against Baker. Next, the Regional Director issued a complaint, and subsequently the Board's General Counsel filed a motion for summary judgment with the Board. Summary judgment was granted because the Board concluded that all issues raised by Baker in the unfair labor practice proceeding were or could have been litigated in the prior representation proceeding and because Baker did not offer any newly discovered evidence or allege any special circumstances requiring the Board to reexamine the representation decision. Consequently, the Board found that Baker violated Section 8(a)(5) and (1) of the National Labor Relations Act (29 U.S.C. § 158(a)(5) and (1) ) and ordered the Company to bargain with the Union upon request and to post appropriate notices.

■■ In a case like this, the guiding principle is not to police or censor propaganda used by the parties at Board elections, but to leave "to the good sense of the voters the appraisal of such matters * * *." Linn v. Plant Guard Workers, 383 U.S. 53, 60, 86 S.Ct. 657, 662, 15 L.Ed.2d 582, quoting with approval from Stewart-Warner Corp., 102

NLRB 1153, 1158 (1953). Intemperate, abusive and inaccurate statements made by a union during an attempt to organize employees are to be tolerated under the Act, although neither party is permitted to injure the other "by circulating defamatory or insulting material known to be false." 383 U.S. at 61, 86 S.Ct. at 662. We applied these considerations in Follett Corp. v. National Labor Relations Board, 397 F.2d 91, 95 (7th Cir. 1968), noting that the Board should not overlook glaring untruths in campaign material, but at the same time stating that not every inaccuracy in campaign propaganda requires an election to be set aside.

■ In its objection to the election, Baker complained that the handbill contained "false and misleading statements," but no particulars were given to support this sweeping allegation. The gravamen of Baker's attack on the handbill before the Regional Director was that the handbill was falsely misleading because of its omissions. Thus Baker attacked the failure of the handbill to mention that its nearby competitor, California Canners and Growers, does not hire migrant seasonal employees and therefore does not provide the housing and furnishings that Baker provides for such employees. The inclusion of California Canners' top three wage rates in the handbill was attacked as misleading because Baker has no employees in those three wage categories. As noted, the Regional Director and ultimately the Board rejected these criticisms of the handbill on the grounds that it truly set forth the existing wage rates of the employees of California Canners and Growers and accurately referred to the general or starting wage rates for both employers. Although it was recognized that the Union did not reveal all of the factors surrounding its campaign propaganda, the election was approved because the Union had not falsified the data it presented in that "the contents of the handbill did not contain departures from the truth."

■ We agree with the Board that the handbill was not sufficiently misleading to require invalidating the election. Baker first argues that the handbill misled the voters because it represented the California Canners' contract as "typical" of other agreements won by the Union in the area near Baker's plant, when that contract was actually atypically advantageous to the Union. We, however, find nothing in the handbill even implying that the California Canners' contract was representative of the Union's other agreements.

Baker next complains that the handbill was misleading because it led the voters to believe that the Union had secured the general labor wage rate of $2.27 per hour for migrant seasonal workers at California Canners. Such workers constituted 77% of the voters at petitioner's plant, while California Canners employed only local seasonal workers. However, the handbill represented accurately that the California Canners' contract contained only one general labor rate, which was applicable to both regular and seasonal employees. Again we find nothing in the handbill implying that there were migrant seasonals at California Canners who received $2.27 per hour.

■■ Even if we assume that the handbill did so imply, the misrepresentation has not been shown to be material, as we shall see. Baker argues that it supplies free housing and utilities to migrant seasonals and asserts the cost of such benefits to be 50¢ per hour. California Canners, on the other hand, need not supply such benefits because it does not hire migrant seasonals. Baker apparently contends that the housing expense is much of the reason for the difference in wages at the two plants. Baker points out that those union contracts in the area, which it alleges are truly typical, provide for free housing to migrants and have a wage rate for seasonal labor close to Baker's, though

somewhat higher. But the Union was not obliged to advise the voters that at some local plants it had not been as successful as at California Canners. National Labor Relations Board v. Trancoa Chemical Corp., 303 F.2d 456, 459 (1st Cir. 1962). Baker, moreover, offered no evidence that migrants are customarily paid less than local seasonals, nor did it show that the duties or skills of local seasonals differ in any way from those of migrants. Furthermore, two of the contracts which Baker asserts as typical of Union-bargained agreements in the area have the same wage rates for both local and migrant seasonals, even though the employers provide free housing and utilities to only the seasonals from out of state. If, therefore, the handbill represented that migrant seasonals at California Canners received the same wages as local seasonals and regular employees there, despite the fact that California Canners employs no migrant seasonals, this is not materially misleading because Baker has shown no reason why one should expect California Canners or any employer to pay migrant seasonals less than local seasonals.[2]

■ Baker points out that 77% of the voters were Spanish-speaking migrants, while noting before the Board that the most intelligible item on the handbill was the 47¢ per hour differential between the starting wage rate at California Canners and Baker. Since this comparison was truthful, it could not have misled the voters. Furthermore, if they did not understand the handbill without a translation, the handbill could have had no impact on them.

Another Baker criticism of the handbill is that it lists nine job categories at California Canners, although Baker employs no workers in the three highest categories shown on the handbill. On the other hand, most of Baker's employees were in the general labor category and the emphasis in the handbill was

2. Baker has not even shown that its local seasonals are paid at a higher hourly rate than its migrant seasonals.

on the general labor rates paid at the two plants. Therefore, this feature was also not so misleading as to require that the election be set aside. National Labor Relations Board v. Red Bird Foods, Inc., 399 F.2d 600, 602 (7th Cir. 1968); National Labor Relations Board v. Georgia-Pacific Corp., 473 F.2d 206, 208 (8th Cir. 1973).

■ In this Court, Baker contends for the first time that the handbill was inaccurate because it supposedly claims that seasonal employees at California Canners received the same fringe benefits as regular employees there. Under Section 10(e) of the Act (29 U.S.C. § 160(e)), this contention comes too late. Red Cross Drug Co. v. National Labor Relations Board, 419 F.2d 1245, 1248–1249 (7th Cir. 1969).

■ We agree with the Board that the cases relied upon by Baker to support its claim that it had a right to a hearing are clearly distinguishable. Since Baker did not request a hearing and failed to submit additional evidence in the representation proceeding, the Board was not required to honor its request for a hearing in the unfair labor practice case. National Labor Relations Board v. O.K. Van Storage, Inc., 297 F. 2d 74, 76 (5th Cir. 1961). Baker was seeking to relitigate in the later case matters that were or could have been adjudicated in the representation proceeding. Therefore, the Board was entitled to dispose of the unfair labor practice charge by summary judgment. Follett Corp. v. National Labor Relations Board, 397 F.2d 91, 95 (7th Cir. 1968).

Judgment will be entered enforcing the Board's bargaining order in full.

No. 73–2010

## APPENDIX

TO THE EMPLOYEES OF BAKER CANNING COMPANY:

The company in the last ditch effort to avoid organizing, issued a 9 point letter.

In answer we ask you only to compare the benefits you receive at Baker Canning Company to the benefits received by the employees of California Canners and Growers.

| BRACKET | RATE |
| --- | --- |
| I | $4.34 |
| II | $4.07 |
| III | $3.91 |
| IV | $3.70 |
| V | $3.45 |
| VI | $3.13 |
| VII | $2.57 |
| VIII | $2.42 |
| IX (General Labor) | $2.27 |

PLUS ...

MEDICAL, DENTAL, SICK LEAVE & PENSION BENEFITS

GUARANTEED JOB SECURITY

VACATIONS & HOLIDAYS

SENIORITY RIGHTS, ON JOB BIDDING, LAY-OFFS, RECALL, OVERTIME, ETC., AND

MANY OTHER CONTRACTUAL BENEFITS

The Union dues for regular employees are $8.00 & seasonal employees are $7.00. The Union dues are tax deductible.

The following example is based on a normal work month of 173 hours (40 hour week) . . . . . . . . . .

The average general labor bracket at California Canners & Growers . . $2.27 per hr.
General labor at Baker Canning Co. . . . . $1.80 per hr.
DIFFERENCE . . $ .47 per hr.

(Time 173 hours = $81.31 per month. This is your cost monthly for not belonging to the Union)

WHY HAVE SO MANY EMPLOYEES LEFT BAKER CANNING COMPANY TO GO TO WORK AT CALIFORNIA CANNERS & GROWERS ????????

VOTE TEAMSTERS!

USCA 4142—Midwest Law Printing Co., Inc., Chicago 11–8–74—250