96 F.3d 1448
 153 L.R.R.M. (BNA) 2512
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
KBO, INC., a wholly owned subsidiary of Klosterman's Baking
Co., Petitioner-Cross Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.
 Nos. 94-6502, 95-5004.
 United States Court of Appeals, Sixth Circuit.
 Sept. 3, 1996.
 
 On Petition for Review and Application for Enforcement from the National Labor Relations Board, Nos. 9-CA-29905, 9-CA-29992.
 N.L.R.B., 1994 WL 637152.
 ORDER ENFORCED.
 Before: MARTIN and BATCHELDER, Circuit Judges, and OLIVER, District Judge.*
 BATCHELDER, Circuit Judge:
 
 
 1
 The Bakery, Confectionery & Tobacco Workers International Union, Local 57, AFL-CIO-CLC ("Union") filed an unfair labor-practice charge against the petitioner, KBO, Inc. After a hearing, the administrative law judge ("ALJ") dismissed the consolidated complaint. KBO, Inc. and Bakery, Confectionery & Tobacco Workers Int'l Union, Local 57, 315 N.L.R.B. 570 app., 572-73, 574-75 (1994). Respondent National Labor Relations Board ("Board") affirmed some of the ALJ's decision but reversed his dismissal of the allegation that KBO violated 29 U.S.C. § 158(a)(1) and (3), part of the National Labor Relations Act ("Act"). 315 N.L.R.B. at 570-71. KBO filed the petition before us, while the Board filed a cross-application for enforcement of its order.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 Early in 1992, the Union began trying to organize the employees of KBO's Springfield, Ohio, bakery. Employee Rory Barnhart openly participated in the organization effort.
 
 
 3
 In May 1992, Mike Outlaw, KBO operations manager, gave a speech to some employees of KBO's Morrestown, Indiana, bakery. Among the employees present for the speech was Terry Wright, who told John Price, a Union representative, that he had a tape recording of Outlaw saying the employees' profit-sharing accounts were financing KBO's antiunion campaign. Price told Barnhart about the tape and its contents.
 
 
 4
 On September 16, 1992, Barnhart told two co-workers that the Union had a tape of Outlaw saying that KBO was using money from the profit-sharing plan to pay antiunion lawyers.
 
 
 5
 One of the coworkers reported Barnhart's comments to KBO's vice president of human resources, who, along with the plant manager, met with Barnhart on September 17, 1992. The vice president informed Barnhart he was making a serious criminal charge against the company. See 18 U.S.C. § 664 (Supp.1996).[1] According to the vice president, Barnhart replied that KBO "had lied and cheated the people in the past. He felt it was his role to let everyone know what was going on." 315 N.L.R.B. at 570. When the vice president asked Barnhart to produce the tape, Barnhart originally said he had it but then said he did not. The plant manager suspended Barnhart until he produced the tape. Although Barnhart did not produce the tape, he was allowed to return to work three days later, at which time he received a final, written warning. Id.
 
 B
 
 6
 Under the Act, an employer engages in an unfair labor practice when it interferes with, restrains, or coerces employees in the exercise of rights to organize, form, and join unions, bargain collectively, etc. See 29 U.S.C. §§ 157, 158(a)(1) (1973). The Act also provides, with several caveats not relevant here, that it is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization...." Id. § 158(a)(3).
 
 
 7
 The ALJ found that Barnhart's suspension was lawful, and dismissed the complaint. See 315 N.L.R.B. app. at 572-73, 574-75. On appeal, the Board disagreed, concluding that Barnhart's remark occurred during a discussion of working conditions and the Union's organizing effort, so the Act "clearly protected" the remark. Id. at 570. Moreover, the Board concluded that a
 
 
 8
 statement which is alleged to be libelous or defamatory will not lose its protection unless it is made "with knowledge of its falsity, or with reckless disregard of whether it was true or false." Contrary to the [administrative-law] judge, we do not find Barnhart's remark so defamatory or opprobrious as to render it unprotected.
 
 Id. (internal citation omitted).[2]
 
 9
 In an apparent retort to the ALJ's finding that Barnhart made his remark "with reckless disregard for the truth and [KBO's] reputation[,]" id. app. at 574, the Board found it
 
 
 10
 readily apparent that Barnhart ... was simply relaying ... in good faith what he had been told by Price, and that he reasonably believed the report to be true. Neither the fact that Barnhart had not himself heard the tape nor that the information may have been inaccurate removes Barnhart's remark from the Act's protection.
 
 
 11
 Id. at 571 (citations omitted). The Board held that Barnhart had no independent obligation to investigate whether the tape recording of Outlaw existed. Id. at 571 n. 6.
 
 II. DISCUSSION
 
 12
 We review the record as a whole to determine whether substantial evidence supports the Board's decision. E.g., Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 488, 71 S.Ct. 456, 464-65 (1950). The Board has great legal leeway in interpreting the Act. National Labor Relations Bd. v. Town & Country Elec., Inc., --- U.S. ----, ----, 116 S.Ct. 450, 453 (1996). Although we owe its interpretation substantial deference, e.g., Pattern Makers' League v. National Labor Relations Bd., 473 U.S. 95, 100, 105 S.Ct. 3064, 3068 (1985) (citation omitted), this deference has its limits. See, e.g., National Labor Relations Bd. v. Health Care & Retirement Corp., --- U.S. ----, ----, 114 S.Ct. 1778, 1781-85 (1994); American Ship Building Co. v. National Labor Relations Bd., 380 U.S. 300, 316, 85 S.Ct. 955, 966 (1965).
 
 
 13
 In Universal Camera, the Supreme Court stated that the
 
 
 14
 "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion.
 
 
 15
 340 U.S. at 496, 71 S.Ct. at 469. Where the ALJ and the Board disagree, we must examine more carefully the evidence supporting the Board's order. E.g., Litton Microwave Cooking Prods. v. National Labor Relations Bd., 868 F.2d 854, 857 (6th Cir.1989) (citations omitted).
 
 B
 
 16
 KBO does not challenge the Board's finding that Barnhart's remark about the contents of the tape occurred during a discussion of the Union's organizing campaign. This is significant, because once we are within the realm of union organizing, KBO's chances of prevailing diminish. See 28 U.S.C. §§ 157, 158(a)(1) (1973). We have held, for example, that in
 
 
 17
 the context of a struggle to organize a union, "the most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth," so long as the allegedly offensive actions are directly related to activities protected by the Act and are not so egregious as to be considered indefensible.
 
 
 18
 National Labor Relations Bd. v. Cement Transp., Inc., 490 F.2d 1024, 1029-30 (6th Cir.) (quoting Linn v. United Plant Guard Workers, 383 U.S. 53, 61, [63,] 86 S.Ct. 657, 662, (1966)) (other citations omitted), cert. denied, 419 U.S. 828, 95 S.Ct. 47 (1974); cf. Bowling Green Mfg. Co. v. National Labor Relations Bd., 416 F.2d 371, 376 (6th Cir.1969) (finding no evidence that a company discharged an employee because she engaged in activity for the purpose of collective bargaining and therefore denying the Board's request to enforce an order in her favor). However, statements "made with knowledge of their falsity or with reckless disregard for their truth are not protected activity." Great Lakes Steel v. National Labor Relations Bd., 625 F.2d 131, 132 (6th Cir.1980) (citations omitted).
 
 
 19
 Along this line, the Fourth Circuit has held that employees "do not forfeit the protection of the Act if, in voicing their dissatisfaction with matters of common concern, they give currency to inaccurate information, provided that it is not deliberately or maliciously false." Owens-Corning Fiberglass Corp. v. National Labor Relations Bd., 407 F.2d 1357, 1366 (4th Cir.1969) (quoting Walls Mfg. Co., 137 N.L.R.B. 134 (1962)); see also National Labor Relations Bd. v. Southern Md. Hosp. Ctr., 916 F.2d 932, 940 (4th Cir.1990) ("Applying Linn, the Board has held that an employer may not prohibit 'merely false' union propaganda, but may only ban statements made with knowledge of their falsity or with reckless disregard for the truth." (citing Radison Muehlebach Hotel, 273 N.L.R.B. 1464 (1985)). Similarly, the Seventh Circuit has held, "Intemperate, abusive and inaccurate statements made by a union during an attempt to organize employees are to be tolerated under the Act, although neither party is permitted to injure the other 'by circulating defamatory or insulting material known to be false.' " Baker Canning Co. v. National Labor Relations Bd., 505 F.2d 574, 576 (7th Cir.1974) (quoting Linn, 383 U.S. at 61, 86 S.Ct. at 662); see also National Labor Relations Bd. v. Owners Maintenance Corp., 581 F.2d 44, 50 (2d Cir.1978).
 
 
 20
 Citing Linn and quoting Owens-Corning, the Eleventh Circuit has held that the Act protects allegedly false and defamatory statements "unless they are made with knowledge of their falsity or reckless disregard for their truth or falsity." National Labor Relations Bd. v. Lummus Indus., Inc., 679 F.2d 229, 234 (11th Cir.1982); cf. Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin, 418 U.S. 264, 279, 94 S.Ct. 2770, 2779 (1974) ("any publication made during the course of union organizing efforts, which is arguably relevant to that organizational activity, is entitled to the protection of Linn "); Davis Co. v. United Furniture Workers, 674 F.2d 557, 563 (6th Cir.) (citing Austin; Linn ), cert. denied, 459 U.S. 968 (1982). The Lummus court further stated that because each case must be decided on its facts, the Board bears the primary responsibility for distinguishing protected and unprotected activity. 679 F.2d at 234 (citing American Telephone & Telegraph Co. v. National Labor Relations Bd., 521 F.2d 1159, 1161 (2d Cir.1975); National Labor Relations Bd. v. Leece-Neville Co., 396 F.2d 773, 774 (5th Cir.1968)).
 
 
 21
 Under the foregoing case law, we cannot say that the Board erred in holding that Barnhart, under these circumstances, had no duty to determine whether the tape recording of Outlaw existed before telling his two co-workers that it did.[3] In that light, and after careful examination of the record, we cannot say that the Board's finding that Barnhart's statement was made in good faith and that he reasonably believed the report to be true is not supported by substantial evidence.
 
 
 22
 Accordingly, we ENFORCE the Board's order.
 
 
 
 *
 The Honorable Solomon Oliver, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Barnhart later claimed he said the money came from the company's profits, not the plan. KBO points out that, in terms of legality, there is a significant difference between the two. Both the Board and the ALJ found Barnhart had said the money came from the profit-sharing plan. 315 N.L.R.B. at 570, app. at 574
 
 
 [2]
 The ALJ did not use any "defamatory-or-opprobrious" standard. See 315 N.L.R.B. app. at 572-73, 574-75
 
 
 [3]
 Our deference to the Board notwithstanding, the Board's holding that Barnhart's remark was protected, because it was not "so offensive, defamatory or opprobrious" as to remove it from the Act's protection, 315 N.L.R.B. at 570 (citations omitted), is tantamount to holding that the Act protects a remark unless the remark is so bad that the Act does not protect it, which might be circular. The Board's holding, although recognized by the Fifth and Seventh circuits, see Reef Indus., Inc. v. National Labor Relations Bd., 952 F.2d 830, 835, 837 n. 19 (5th Cir.1991); Dreis & Krump Mfg. Co. v. National Labor Relations Bd., 544 F.2d 320, 329 (7th Cir.1976), finds no express support in Supreme Court or Sixth Circuit case law