NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GEORGIA–PACIFIC CORPORATION,
Respondent.

No. 72–1150.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 4, 1972.

Decided Jan. 31, 1973.

Gaines N. Houston, Little Rock, Ark., for respondents.

William H. DuRoss, III, Atty., N. L. R. B., Washington, D. C., for petitioner.

Before MATTHES, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this Court for enforcement of its order requiring the Georgia-Pacific Corporation to bargain with the Southern Council of Lumber and Plywood Workers United Carpenters and Joiners of America, AFL–CIO. The Board's decision and order are reported at 193 N.L.R.B. No. 133, 78 L.R.R.M. 1403 (1971).

On December 10, 1970, the Union won a Board-conducted consent election by a seventy-seven to seventy-five vote. Thereafter, Georgia-Pacific filed objections to conduct, which it contended affected the results of the election. It claimed that within twenty-four hours of the election, the Union circulated a handbill containing material misrepresentations and omissions concerning job

classifications, wage rates and other benefits which the Union had obtained for employees represented by it at other locations.[1]

The Regional Director of the Board conducted an administrative investigation of Georgia-Pacific's objections and afforded the parties an opportunity to submit evidence.

On January 20, 1971, the Director found the objections to be without merit. He recommended that the Board overrule them and certify the Union as the bargaining agent of the employees.

On February 5, 1971, Georgia-Pacific filed exceptions to the Director's report asking that the election be set aside or that a hearing be held. On May 4, the Board found that the objections raised no substantial questions of fact necessitating a hearing. It certified the Union as the bargaining agent.

Thereafter, the Union requested Georgia-Pacific to bargain. It refused. The Union then filed unfair labor practice charges. The Board issued a complaint alleging a refusal to bargain in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act. 29 U.S.C. §§ 151 et seq. Georgia-Pacific admitted its refusal to bargain, but contended that it was justified in its refusal because of the Union's pre-election representations. The General Counsel moved for summary judgment on the grounds that the issues raised by Georgia-Pacific had been fully litigated and determined adversely to it in the representation case. The Board granted the motion for summary judgment and found a refusal to bargain. This proceeding followed.

Georgia-Pacific argues on appeal: (1) that the Board erred in failing to grant a hearing on Georgia-Pacific's objection to the election, and (2) that the Board's

---

1. "TO ALL EMPLOYEES OF GEORGIA PACIFIC CORPORATION

EL DORADO, ARKANSAS

GREETINGS:

IMPORTANT

THE FOLLOWING IS WAGE RATES, JOB CLASSIFICATIONS, AND OTHER BENEFITS OUR ORGANIZATION HAS NEGOTIATED FOR OTHER EMPLOYEES WHO WORK FOR GEORGIA PACIFIC AND PAUL B. HULT LUMBER COMPANY. AS YOU CAN SEE, IT PAYS TO BELONG TO THE CARPENTERS UNION, IT DOESN'T COST. [Emphasis included.]

YOUR ORGANIZING COMMITTEE
SOUTHERN COUNCIL OF LUMBER
& PLYWOOD WORKERS
UNITED BROTHERHOOD OF
CARPENTERS & JOINTERS
OF AMERICA AFL–CIO

---

GEORGIA PACIFIC CORPORATION

| JOB CLASSIFICATION | Scragg Mill 6–1–69 | 6–1–70 | Sawmill 6–1–71 |
|---|---|---|---|
| Scragg Operator | 3.71 | 3.93 | 4.17 |
| Edgerman | 3.71 | 3.93 | 4.17 |
| * * * * * * * | * * | * * | * * |

PAUL B. HULT LUMBER COMPANY

| JOB CLASSIFICATION | 6–1–69 | 6–1–70 | Sawmill 6–1–71 |
|---|---|---|---|
| SAWYER | $5.13½ | $5.44½ | $5.77 |
| PLANERMAN | 4.24½ | 4.50 | 4.77" |

findings were not based on facts supported by substantial evidence and on the application of correct legal standards. We reject both contentions.

 In our view, Georgia-Pacific did not raise substantial and material factual issues necessitating a hearing. See, N. L. R. B. v. Griffith Oldsmobile, Inc., 455 F.2d 867 (8th Cir. 1972); N. L. R. B. v. DIT–MCO Incorporated, 428 F.2d 775 (8th Cir. 1970). It merely questioned the inferences drawn from known facts which were largely undisputed.

We also believe that there is substantial evidence on the record as a whole to support the Board's finding that the Union's distribution of the handbill on the day preceding the election was not sufficient grounds for setting aside the election. Setting aside an election because of misleading campaign propaganda is appropriate:

" * * * only where there has been a misrepresentation or other similar campaign trickery, which involves a substantial departure from the truth, at a time which prevents the other party * * * from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on an election. * * *" (Footnote omitted.)

Hollywood Ceramics Co., 140 N.L.R.B. No. 36, 51 L.R.R.M. 1600, 1601 (1962). See, Bok, The Regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act, 78 Harv.L.Rev. 38, 86–89 (1964). Here, the handbill was distributed at a time when the employer did not have a reasonable chance to reply, but it accurately reported wage rates being paid to members of the carpenters' union doing work similar to that being done by Georgia-Pacific employees. Moreover, it did not represent that the wage rates were local ones or that the plants in which the rates were paid were identical to the Georgia-Pacific plant. See, N. L. R. B. v. Red Bird Foods, Inc., 399 F.2d 600 (7th Cir. 1968). Finally, the handbill did not create the impression that the list of wage rates could be obtained simply by voting for the Union.

We agree with the Board that this was a case in which the evaluation of campaign material is to be left to the good sense of the voters. The Board's order will be enforced.