**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SOUTHERN PAPER BOX COMPANY, Respondent.**

No. 72–1159.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 4, 1972.

Decided Jan. 31, 1973.

Roger C. Hartley, Atty., N.L.R.B., Washington, D. C., for petitioner.

Gaines N. Houston, Little Rock, Ark., for respondents.

Before MATTHES, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this Court for enforcement of its order requiring the Southern Paper Box Company to bargain with the United Papermakers and Paperworkers, AFL–CIO. The Board's decision and order are reported at 193 N.L.R.B. No. 134, 78 L.R.R.M. 1464 (1971).

On April 9, 1971, the Union won a Board-conducted consent election by an eighty-three to seventy-two vote. Thereafter, Southern filed six objections to conduct which it contended affected the results of the election. It claimed, in substance, that misrepresentations and threats by Union representatives and adherents interfered with the employees' free choice.

The Regional Director of the Board conducted an administrative investigation of Southern's objections and afforded the parties an opportunity to submit evidence. He found the objections to be without merit and certified the Union as the bargaining agent of the employees.

Southern filed a request for review with the Board, asking that the certification be set aside and a new election ordered, or that a post-election hearing be ordered to resolve issues raised by Southern's objections. On July 13, 1971, the Board affirmed the Regional Director's decision, and denied Southern's request for review on the ground that no substantial issues warranting review had been raised.

Thereafter, the Union requested Southern to bargain. It refused. The Union then filed unfair labor practice charges. The Board issued a complaint alleging a refusal to bargain in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act. 29 U.S.C. §§ 158(a)(1) and (5). Southern contended that it was justified in its refusal because the certification was invalid for the reasons urged in its objections to the election. The General Counsel moved for summary judgment on the grounds that the issues raised by Southern had been fully litigated and determined adversely to Southern in the representation case. The Board granted the motion for summary judgment and found a refusal to bargain. This proceeding followed.

Southern argues on appeal:. (1) that the Board erred in failing to grant a hearing on Southern's objections to the election, and (2) that the certification of the Union by the Board is invalid because the election should have been set aside on the basis of Southern's objections to the election.

For convenience and clarity, we first consider Southern's objections I, III, IV and V. The substance of these objections is that Union representatives visited employees' homes before the election and materially misrepresented wage rates and benefits purportedly obtained by the Union in labor agreements with other companies in Arkansas and Texas, that Union officials misrepresented the amounts of strike benefits that would be paid to employees if they went on strike, and that Union representatives led female employees to believe that they could continue to work until age sixty-five if the Union won the election. The Board interviewed witnesses with respect to each of these objections and summarized the testimony that it obtained from them. It first concluded that the various statements did not raise substantial and material factual issues which necessitated a hearing. It then held that the statements did not involve a substantial departure from the

truth, that Southern had an opportunity to reply to the statements and that most of the statements were capable of evaluation by employees.

██ We agree with the Board that the statements of the various witnesses did not raise substantial and material factual issues which necessitated a hearing. We also believe that there is substantial evidence in the record as a whole to support the Board's finding that the election should not be set aside because of any of the matters alleged in these objections. In reaching this decision, we apply the same standard that we applied in National Labor Relations Board v. Georgia-Pacific Corporation, 8th Cir., 473 F.2d 206, decided this date. We there held that an election would be set aside because of misleading campaign propaganda:

" * * * only where there has been a misrepresentation or other similar campaign trickery, which involves a substantial departure from the truth, at a time which prevents the other party * * * from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on an election. * * * " (Footnote omitted.)

Hollywood Ceramics Co., 140 N.L.R.B. No. 36, 51 L.R.R.M. 1600, 1601 (1962). Specifically, our review of the record convinces us that the statements made by Union officials and adherents either did not involve a substantial departure from the truth, or that Southern had an opportunity to reply to them, see, N.L.R.B. v. Houston Chronicle Publishing Company, 300 F.2d 273 (5th Cir. 1962), or that the statements were capable of evaluation by employees, N.L.R.B. v. National Beverages, Inc., 418 F.2d 206 (5th Cir. 1969).

We next consider objection II. Southern offered affidavits from five employees which stated that the affiants or other employees had been threatened with loss of jobs, property damages and physical violence unless they continued

to support the Union. The persons alleged to have made the threats denied making them. The Board held that even if the threats had been made, they were not grounds for setting aside the election. It stated:

"The statements of possible job loss or potential harassment by employees who are union adherents do not constitute grounds for setting aside the election. Those employees identified as making threats of job loss clearly possess no authority to affect the job status of employees and such threats can readily be evaluated by employees. The mere fact that an employee supports the Union or serves as an election observer does not constitute grounds for finding that employee to be an agent of the Union.

"Assuming *arguendo* that all of the above incidents occurred as related by the Employer's witnesses, the incidents do not provide adequate basis for setting aside the election. The remarks, if actually made, were made by rank-and-file employees in a campaign where no actual violence of any sort occurred. Further, the statements were allegedly made only to a few employees and were not repeated to others. Accordingly, it is found the incidents, even if they occurred as alleged, did not create an atmosphere of general fear and reprisal and are not grounds for setting aside the election, and no merit is found to this objection." (Emphasis included and footnotes omitted.)

We disagree with the Board's analysis. The statements were specific and provocative. They were communicated to at least fifteen employees out of a total work force of one hundred and seventy, and perhaps to many more. Under such circumstances, we feel an adversary hearing is necessary to determine whether the threats were made, how broadly they were communicated and whether they created an atmosphere of fear and reprisal so as to render a free expression of choice impossible.

In so holding, we recognize:

"* * * * that neither unions nor employers can prevent misdeeds or misstatements by persons over whom they have no control, and that a rule giving the same weight to conduct by third persons as to conduct attributable to the parties would substantially diminish the possibility of obtaining quick and conclusive election results. Nevertheless, representation elections will be set aside where nonparty misconduct has taken place and such conduct is shown to have created 'an atmosphere of fear and reprisal such as to render a free expression of choice impossible.' Manning Maxwell & Moore, Incorporated v. N.L.R.B., 324 F.2d 857, at 858 (5th Cir. 1963)." (Footnote omitted.)

N.L.R.B. v. Griffith Oldsmobile, Inc., 455 F.2d 867, 870 (8th Cir. 1972).

Finally, with respect to objection VI, five employee witnesses testified that a Union representative told them that Southern's president had taken bonus money due the employees in 1970 and had used the money to finance a trip to Europe. The Union representative denied making the statement. The Board held that the statement if made was not grounds for setting aside the election because Southern had an adequate opportunity to reply to it and that, in any event, the statement "constitute[d] permissible campaign propaganda of a type which employees can readily be expected to evaluate for themselves." Southern denied that the statement was true, and further denied that it had an adequate opportunity to reply to it.

We are simply unwilling to accept the Board's conclusion that such an *ad hominem* accusation at a time when Southern was unable to respond was, nevertheless, permissible campaign propaganda which employees could be expected to evaluate for themselves. Thus, the crucial questions are whether or not the statement was made, and whether or not Southern had an opportunity to respond. It is imperative that these disputed factual issues be resolved in an adversary hearing.

In summary, we hold that substantial and material factual issues were raised by Southern's objections II and VI, and that a hearing is necessary to resolve them. Recognizing that time is of the essence, we remand to the Board with direction to it to conduct an early hearing on Southern's objections II and VI or to dismiss the complaint against it. In the event that the Board, after hearing, finds against Southern and decides to renew its petition to enforce, it is directed to file the record within ten days after filing its application for enforcement. Thereafter, the Board shall serve and file its brief within twenty days after the date on which the record is filed. Southern shall serve and file its brief within ten days after service of the brief of the Board, and the Board may serve and file a reply within five days after service of the brief of Southern. The parties are directed to proceed on the basis of a typewritten record and briefs.

Costs shall be taxed equally to the parties.