**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PAYLESS CASHWAY LUMBER STORE OF SOUTH ST. PAUL, INC., Respondent.**

No. 74–1289.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1974.

Decided Dec. 19, 1974.

Richard A. Cohen, Atty., N.L.R.B., Washington, D. C., for petitioner.

James M. Samples, Faegre & Benson, Minneapolis, Minn., for respondent.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

The National Labor Relations Board asks this Court to enforce a bargaining

order against Payless. Payless defends on the ground that the Board's certification of the Union [1] is invalid. We refuse to enforce the Board's order because we believe that remarks made by a public official at a Union election-eve meeting were coercive and so closely related to the election that they had a probable effect on the employees' actions at the polls.

An election by secret ballot was conducted among certain Payless employees on August 15, 1972. The Union won the election by a fourteen to nine vote. A week later, Payless filed timely objections to conduct affecting the results of the election. It alleged, in substance, that: (1) the Union misstated material facts to which the company had no opportunity to reply; (2) the Union threatened and intimidated employees; (3) a prominent local person interfered with the election and threatened violence to an employee's person and property; and (4) the election was conducted in an atmosphere of fear, coercion and misrepresentation. The Acting Regional Director conducted an investigation and issued his report and recommendations in which he overruled objections relating to alleged misrepresentations and directed that a hearing be held on the following objection:

> At the [Union's] meeting with employees on the night of August 14, an official of the City of South St. Paul [the Acting Mayor, Michael Verderosa] was introduced to the employees by a representative of the [Union] and made a short speech. The city official is alleged to have asked whether a particular employee favored the Union, and then to have stated that this employee had better favor the Union or he would slit his tires. The city official denies making these remarks.

Sixteen witnesses, including Verderosa, testified at the hearing. The Hearing Officer found that Verderosa had attended the meeting and that prior to its start, he had engaged in a conversation with Emil Forrester, a former employee of Payless. He summarized the testimony of employee witnesses as follows:

\* \* \* [T]he testimony above reveals that a great deal of confusion exists with regard to what Mr. Verderosa actually said in his conversation with Emil Forrester.

Stover, Steven Schmitt, Walls, Anderson, Schwingle, Dorsey, Turner, Rossing, Klug, Reid, Brown and Mertens either did not overhear Verderosa's conversation with Forrester or recalled very little of the conversation referred to above. There [sic], I find their testimony of little probative value.

This leaves only the testimony of Kraemer, Thomas Schmitt and Verderosa. Kraemer could not recall the exact words used by Verderosa or recall the nature of the conversation immediately preceding or following his version of the conversation. For this reason, as well as the demeanor of this witness while testifying, I do find his testimony unreliable.

Thomas Schmitt, likewise, did not recall the nature of the conversation immediately preceding or following his version of the conversation. This witness's convenient memory is particularly important since, according to testimony, he took notes at the meeting which he later gave to the Employer. Based on the foregoing, and the demeanor of the witness while testifying, I discredit the testimony of this witness.

The conversation between Verderosa and Forrester was a personal conversation and was merely overheard, in part by others. I, therefore, conclude that Verderosa, himself, was in the best position to give the most accurate version of his conversation, and credit the testimony of Verderosa, based on the foregoing, his forthright attitude

1. Midwestern States Regional Council No. IV, International Woodworkers of America, AFL–CIO.

while testifying, and his total demeanor.

The Hearing Officer summarized Verderosa's testimony as follows:

* * * "I asked a question whether Larry Machacek who I worked with for about 20 years and who also was a steward in my department, if he could belong to that union (Petitioner) or did he have to belong to Local Union 120 (of the Teamsters), which is a truck driver (union). That is the question I asked. Nobody seemed to answer it. And then I stated that if he had to belong to 120, that they would cut his tires if he didn't belong to the union."

The Hearing Officer found that neither Verderosa's presence nor the statement he made prior to the formal commencement of the meeting raised substantial or material issues with respect to conduct affecting the results of the election.

Exceptions to the Hearing Officer's report and recommendations were taken by the employer. The Board accepted the Hearing Officer's findings as to what was said by Verderosa but rejected his findings as to when the remarks were made; it found that the remarks occurred during the Union meeting rather than in a conversation with Forrester before the meeting. It concluded that the remarks did not reasonably have any significant impact on the election.

Thereafter, the employer refused to bargain and the Board issued a complaint charging the employer with refusal to bargain. It determined in a summary proceeding that Payless had refused to bargain and that all issues raised in defense of Payless had been litigated and foreclosed in the prior representation proceeding. *See* Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 157–163, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). This enforcement proceeding followed.

We are convinced from a careful reading of the record that the Board's findings with respect to what Verderosa said are not supported by the record as a whole. The Hearing Officer's sweeping finding, adopted by the Board, that Stover, Steven Schmitt, Walls, Anderson, Schwingle, Dorsey, Turner, Rossing, Klug, Reid, Brown and Mertens either did not overhear Verderosa's conversation with Forrester with reference to slitting an employee's tires, or recalled very little of the conversation, is simply not supported by the record. Five of the twelve—Rossing, Klug, Reid, Brown and Mertens—testified, in substance, that Verderosa stated at the election-eve meeting that an employee's tires would be slit if he did not support the Union.

Rossing testified that when someone in the front of the room—to the best of his recollection, Verderosa—was asked, before the meeting, whether a trucker should be a member of the Union, he replied, " 'He had better be,' or they would do something to his front tires, cut them or slash them, I don't remember the exact words."

Klug testified that Verderosa made a statement just before or during his formal remarks to the effect that "we'll slash his tires." He further testified that he initially thought that the statement was directed towards management; but after talking to other employees, understood that the statement was directed to the truck driver, Larry Machacek.

Brown testified that after Verderosa was introduced, he said "if [a] certain person didn't vote for the union he would slit his tires."

Mertens testified as follows:

* * * The mayor, Verderosa, noticed that Machacek wasn't there, and he asked how Machacek stood on the grounds of the union. And he stated that he had better join or we would slash his tires or they would slash his tires or something on that order. * * * I can't recall truthfully if he said we or they or I.

Mertens further testified that when Verderosa made the statement, he was "[j]ust talking so he wanted to be heard."

Two additional witnesses in this group, Dorsey and Turner, testified that while

they did not overhear the remarks attributed to Verderosa, they did hear employees talking about Verderosa's statement the next day on the job.

It is clear that the testimony of Rossing, Klug, Reid, Brown and Mertens was sufficiently specific to have probative value, and the testimony of Dorsey and Turner tended to support their version of what Verderosa said.

The Hearing Officer discredited the testimony of Kraemer on the grounds that Kraemer could not recall the exact words used by Verderosa or recall the nature of the conversation immediately preceding or following his version of the conversation. The record does not support this conclusion. Kraemer's testimony was quite precise. He testified that prior to the meeting, he was seated approximately twenty feet from Verderosa, who was standing at the bar, and that Verderosa was, in turn, approximately twenty feet from Emil Forrester. Kraemer was asked:

> Q. Now, based on your observations and what you heard, can you describe the conversation that you recall that took place between Mr. Verderosa and Mr. Foster [sic] at that point? A. Mr. Verderosa asked Emil Foster [sic] if Larry, the man who used to work at Swift's or something like that, was for the union. And Emil Foster [sic] then said that he didn't know. He hadn't talked to Larry about it. And Mike said, "Well, he had better be," or damn well better be, or something to that effect, "or I will slit his tires with a full load on it."

Kraemer then testified that he didn't hear what had been said earlier between Verderosa and Forrester because until the tire-slitting statement was made, Verderosa had been standing closer to Forrester.

The Hearing Officer also discredited Thomas Schmitt's testimony on the grounds that he did not recall the nature of the conversation immediately preceding or following his version of the conversation. The record does not support this conclusion. It reveals that the Hearing Officer questioned Schmitt at the hearing and asked him what was said before and after the questioned conversation. Schmitt responded:

> * * * [A]fter he made the statement Mr. Forrester mentioned you don't have to worry about it; Larry's for it 100 per cent, see. And then, again, I guess there was just small talk went on and then I believe Mr. Bluhm called the meeting to order.
> * * *

The Hearing Officer then asked what was said prior to the time the conversation started, and Schmitt answered:

> * * * [I]t was just mostly talk. They were talking back and forth about the union and his work, and stuff like this. Again, I can't remember exactly verbatim what he said before that.

In the light of this testimony, the reason given by the Hearing Officer to discredit Schmitt's testimony was inexplicable. We also note that Schmitt's testimony was consistent with a prior statement given by him and received by the Board in evidence.

The Hearing Officer stated in his report that there was an additional reason for discrediting the testimony of Kraemer and Thomas Schmitt—their demeanor while testifying. We view this reason as largely make-weight. The testimony of each of these witnesses was internally consistent and consistent with the other witnesses who testified with respect to the conversation, namely, Klug, Rossing, Brown and Mertens. Moreover, the record does not reveal that either witness was evasive or argumentative while on the stand.

 Accepting, as we do, the testimony of the employees indicated above, we have no alternative but to reject the testimony of Verderosa. We do so because we firmly believe from an examination of the entire record, that the evidence of the seven employees or ex-employees is more credible than that of Verderosa. See N.L.R.B. v. Audio Industries, Inc., 313 F.2d 858, 864 (7th Cir.

1963); Farmers Co-Operative Co. v. N.L.R.B., 208 F.2d 296, 303–304 (8th Cir. 1953); K. Davis, Administrative Law Treatise § 29.06 at 144–145. We reach this decision in full awareness of the rule that the question of credibility of witnesses and the weight to be given their testimony is *primarily* one for determination by the trier of facts. N.L.R.B. v. Morrison Cafeteria Co., 311 F.2d 534, 538 (8th Cir. 1963). *See also* N.L.R.B. v. Walton Manufacturing Company, 369 U.S. 404, 419, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962) (Frankfurter, J., dissenting). But the rule is not one to be applied mechanically for if we were to so apply it, the substantial evidence test set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(E), and in Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), would be meaningless. The reviewing court would be compelled to sustain any finding as to which testimonial evidence was conflicting. *See* Davis, *supra* § 29.06 at 144. This case is one in which we feel that the record as a whole requires that we disregard the credibility findings of the Hearing Officer and the Board, and we, therefore, reject them.

■ We turn then to the remaining question: whether Verderosa's statements were coercive and so closely related to the election that they had a probable effect on the employees' actions at the polls. We think that these questions must be answered in the affirmative.

Verderosa was an invited guest at the election-eve meeting. His remarks were coercive on their face and clearly related to the election which was scheduled to be held in a few hours. The remarks were overheard by six employees and communicated by one or more of them to other employees on the job. We can reach no other conclusion from these facts than that the remarks created an atmosphere in which a free expression of choice was impossible. *See* N.L.R.B. v. Southern Paper Box Co., 473 F.2d 208, 211 (8th Cir. 1973); *cf.*, N.L.R.B. v. Grif-

fith Oldsmobile, Inc., 455 F.2d 867, 870–871 (8th Cir. 1972). We, therefore, refuse to enforce the Board's order.

Enforcement order denied.