NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

RAVEN INDUSTRIES, INC.,
Respondent.

No. 74–1319.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1974.

Decided Dec. 26, 1974.

Rehearing and Rehearing En Banc
Denied Jan. 24, 1975.

Aileen Armstrong, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Gale E. Fisher, Sioux Falls, S. D., for respondent.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY, Circuit Judge, and MEREDITH, Chief District Judge.[*]

* JAMES H. MEREDITH, Chief Judge, Eastern District of Missouri, sitting by designation.

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this Court to enforce its order requiring Raven Industries, Inc., upon request, to sign a collective bargaining agreement with the Union[1] and to give retroactive effect to its terms to January 30, 1973, or absent a request, to bargain with the Union and embody any understanding reached in a signed agreement. The order also requires Raven to post appropriate notices.

On February 2, 1972, the Union was certified as the collective bargaining representative of the production and maintenance employees of Raven at Huron, South Dakota. When the Union requested Raven to meet and bargain, Raven refused to do so in Huron, stating that it would meet only at its main office in Sioux Falls, one hundred and twenty miles away. After the Union filed a charge with the Board, based on Raven's refusal to bargain at Huron, Raven changed its mind and agreed to bargain in good faith at Huron and to sign any agreement reached.

Thereafter, a number of bargaining sessions were held, and what purported to be a final draft of an agreement was prepared by Raven for signature on January 30, 1973. On that date, it developed that there was an incomplete meeting of the minds as to whether Raven would continue its existing policy of paid sick leave.[2] As a result, the agreement was not signed by the parties.

On February 7, 1973, the Union filed an unfair labor practice charge, alleging, in substance, that Raven's refusal to sign an agreement incorporating existing sick leave benefits within it or by reference was violative of §§ 8(a)(1) and (5) of the National Labor Relations Act. 29 U.S.C. § 151 *et seq.*

On March 30, 1973, the Regional Director refused to issue a complaint on the ground that

* * * [t]he investigation failed to disclose sufficient evidence to establish that there was not a good faith misunderstanding as to whether the Employer had agreed to continue the existing sick pay benefits or the charging party accepted the Employer's proposal that sick leave would be without pay.
* * *

On April 11, 1973, the Union informed Raven that it would execute the agreement on the basis of Raven's understanding. The Union's letter stated in part:

At this time the union, in view of the board ruling on its unfair labor practice charge on this subject, accepts the company position and language on sick leave and requests that the contract be executed as otherwise previously agreed to.

On April 12, 1973, Raven refused to execute any agreement on the grounds that the Union's year of certification had expired and that the Union no longer represented a majority of the employees.[3]

On April 17, 1973, the Union filed an unfair labor practice charge, contending that Raven's failure to sign the agreement on Raven's terms was in violation of §§ 8(a)(1) and (5) of the Act.

On July 16, 1973, the Regional Director issued a complaint. That com-

---

1. Local 605, Allied Industrial Workers of America, AFL–CIO.

2. Raven's "Employee Information Booklet" set forth the following provisions with respect to sick leave:

    Each permanent, full time hourly paid employee will be eligible for paid sick leave on a yearly basis according to the following schedule:

| Length of Service | Days of Sick Pay |
| --- | --- |
| 0–1 year | 0 days |
| 1–5 years | 7½ days |
| 5–10 years | 10 days |
| Over 10 years | 12½ days |

3. On February 9, 1973, with assistance from Raven, a decertification certificate had been filed by Union employees. The petition was subsequently withdrawn.

plaint alleged that Raven and the Union had reached an agreement on all terms for a collective bargaining agreement by January 30, 1973, and that Raven agreed to prepare a draft of said contract; that when the draft was presented by Raven to the Union, the parties were unable to agree whether Raven's draft accurately reflected the agreement reached during the negotiations; that on April 11, 1973, the Union acceded to Raven's position and agreed to sign the collective bargaining agreement submitted to it; that on April 12, 1973, Raven refused to execute the agreement submitted; and that from February 1, 1973 to April 10, 1973, Raven sponsored petitions seeking to decertify the Union. The Regional Director claimed that Raven's failure to execute the contract prepared by it and its sponsorship of the decertification petition was violative of §§ 8(a)(1) and (5) and §§ 2(6) and (7) of the Act.

An Administrative Law Judge held an evidentiary hearing. He found that the parties had reached an understanding as to all of the terms of the collective bargaining agreement by January 30, 1973, that a continuance of sick pay in accordance with note 2 of this opinion was among the fringe benefits agreed to by the parties, and that Raven's refusal to sign the collective bargaining agreement was violative of the Act. He further found that Raven had assisted and encouraged the petition to decertify the

Union, and that this assistance was violative of the Act. He recommended that Raven be ordered:

(1) Upon request, to forthwith execute and sign the collective bargaining agreement as requested by the Union at the parties' January 30, 1973, meeting, *with the term and expiration date thereof calculated from the date of Raven's execution thereof* without prejudice to any wage increase or benefits granted in the interim.

(2) To continue in effect its existing policies regarding sick pay and sick leave.[4]

(3) If no request to sign is made by the Union, then upon request, to bargain in good faith with the Union and to embody in a signed agreement any understanding reached.

(4) To post appropriate notices.

The Board affirmed the rulings, findings and conclusions of the Administrative Law Judge. Its decision is reported at 209 N.L.R.B. No. 66, 85 L.R.R.M. 1602 (1974). It adopted the Administrative Law Judge's recommended order with one modification.[5] It deleted a provision requiring that the expiration date be calculated from the date of Raven's execution of the agreement and substituted therefor the requirement that Raven,

\* \* \* [u]pon request, forthwith execute and sign the collective-bargaining contract agreed to on January 30,

---

4. This portion of his recommended order was included in a footnote which read, in part, as follows:

\* \* \* The Union's April 11, expression of willingness in effect to enter into any agreement desired by the Employer was no more than a last desperate gambit or test by the Union of the Employer's *bona fides* —a test which the Employer failed by out-of-hand refusing to execute even such an agreement. As heretofore noted, the Employer has in no way at any time changed its existing policies regarding sick pay and sick leave—indeed, they remain today as they have always been. It would be inequitable to hold the Union to the position of desperation which it was willing to take on April 11, but which the Employer *refused.* \* \* \* [Emphasis included.]

5. The Board stated:

The Administrative Law Judge \* \* \* recommended \* \* \* that [Raven] should be required to execute and sign the collective-bargaining contract agreed to on January 30, 1973, effective as of the date it is actually executed by [Raven]. \* \* \* [S]uch a requirement would extend the agreed-upon term of the collective-bargaining contract and would amount to a change of a substantive contractual provision. \* \* \* [T]he Act does not envision that the Board require a company or a union to agree to a substantive provision not embodied in the collective-bargaining agreement. \* \* \*

Accordingly, we have modified the recommended Order of the Administrative Law Judge by substituting an Order which accords with our normal remedies in cases of this type. \* \* \*

1973, and give retroactive effect to the terms and conditions of the contract from January 30, 1973, with interest at 6 percent per annum for the loss of any benefits which would have accrued to the employees under the contract [Raven] refused to sign.

■ We enforce the Board's order with three modifications:

(1) The effective date of the contract, if the Union chooses to have it signed, shall be April 11, 1973, and retroactive effect shall be given to its terms and conditions to that date with interest at six percent per annum for the loss of any benefits which would have accrued to the employees under the contract Raven refused to sign. The contract shall by its terms continue in effect for three years, until April 11, 1976, with annual wage reopeners.[6]

(2) Raven is not required to consider the paid sick leave provisions set forth in note 2 of this opinion as being a part, by reference or otherwise, of the agreed to collective bargaining agreement.

(3) If the Union does not request that the agreement be signed, Raven's obligation to bargain at the Union's request shall continue for a period of one year from the effective date of the order of this Court.

■ We make these modifications for two reasons. First, the complaint was issued on the theory that no meeting of the minds occurred until April 11, 1973. In this respect, it was consistent with the earlier decision of the Regional Director dismissing the Union's charge that the parties had been in agreement as to all the terms and conditions of the collective bargaining agreement on January 30, 1973. The record does not reveal that any amendments to the complaint were sought during or at the end of the proceedings. Moreover, the Union waived its right to insist on an inclusion of sick pay in the contract by agreeing to accept the contract as proposed by Raven on April 11, 1973.

■ Second, substantial evidence on the record as a whole does not support the Board's finding that the parties were agreed by January 30, 1973, that paid sick leave would be included in the collective bargaining agreement. The Administrative Law Judge gave weight to the fact that paid sick leave was still in effect as of the date of the hearing in reaching the conclusion that the parties had agreed to paid sick leave. He was in error in so doing. The fact that Raven elected to continue certain fringe benefits in effect pending final signing of the collective bargaining agreement is not evidence that they had agreed that they would continue to do so after the collective bargaining agreement was signed. The Administrative Law Judge suggested that it would be unfair for Raven to discontinue paid sick leave because the Union had won very little as a result of its negotiations. The fairness of Raven's position is not for the Board to decide.

Three witnesses for the General Counsel testified that they had served on the Union committee and that company negotiators had told the Union committee that Raven would continue its policy of providing sick pay for employees who were out for short periods of time. The Administrative Law Judge and the Board credited this testimony and discredited the testimony of Raven witnesses to the contrary. We are convinced, by a reading of the entire record, that they were in error in so doing. See N.L. R.B. v. Payless Cashway Lumber Store of South St. Paul, Inc., 508 F.2d 24, at 27–28 (8th Cir. 1974).

Pamela Sarahan, the principal Union witness, signed an affidavit given to the Regional Director of the Board at the time the February 7, 1973, charge was being investigated to the effect that no

---

**6.** We find no merit to Raven's contention that the Union was without authority to sign the contract on April 11, 1973, because it had not been ratified by its membership. Ratification is an internal union matter. Employer insistence on ratification as a condition to agreement violates §§ 8(a)(1) and (5) of the Act. Houchens Market of Elizabethtown, Inc. v. NLRB, 375 F.2d 208, 212 (6th Cir. 1967).

agreement on sick pay had been reached by January 30. This statement was directly contrary to the testimony that she gave at the hearing.

The collective bargaining agreement submitted by Raven for the Union's signature did not contain any provision with respect to paid sick leave, nor did it contain a clause indicating that existing employee benefits would continue in effect. On January 30, 1973, the Union submitted its comments on the draft agreement. These handwritten notes indicate that the Union desired to include a provision in the contract that fringe benefit policies would remain as is, and that these fringe benefit policies included sick pay. The exhibit indicates that Raven agreed to most of the suggested changes in the draft made by the Union, but that Raven did not agree to the change with reference to sick benefits.

Joanne Claassen, a member of the negotiating committee, testified that the contract consisted of three exhibits, General Counsel Exhibit Nos. 4A, 4B and 4C. Article IX, Section 2, of Exhibit 4A states specifically that "sick leave will be without pay." Miss Claassen's explanation that this provision referred to absences of longer than two weeks is unpersuasive.

The testimony of the business agent, Stan Frank, on the question of sick pay was vague and uncertain. He stated:

> I called Mr. Burke [Raven's attorney and chief negotiator] to tell him that we had ratified the contract and that we were ready to meet with the company. As a part of the conversation, I mentioned there had been a rumor at the plant and during our ratification meeting, Carol Pribyl and maybe another girl or so talked about the fact that there was some discussion as to whether we had sick pay.

The Administrative Law Judge then asked Mr. Frank what Burke had said, and he replied:

> *  *  * He didn't make big of what I had mentioned. I don't think he ever replied to it.

In sum, the most that the record shows is that there was a misunderstanding between Raven and the Union as to whether sick pay benefits were to be included in the contract. The evidence, as a whole, simply does not support the Administrative Law Judge's finding concurred in by the Board that the parties had in fact agreed to the inclusion.

Inasmuch as Raven concedes in its brief the irregularity of its action with respect to other matters charged, there is no need to do anything more than enforce the Board's order as modified by this opinion.