ARLINGTON HOTEL COMPANY, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Southern Missouri-Arkansas District Council, International Ladies' Garment Workers' Union, AFL–CIO, Intervenor/Respondent.

No. 82–1666.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1983.

Decided July 8, 1983.

House, Holmes & Jewell, P.A., J. Bruce Cross and Russell Gunter, Little Rock, Ark., for petitioner.

James E. Youngdahl, Jay Thomas Youngdahl, Youngdahl & Larrison, Little Rock, Ark., for intervenor/respondent.

Howard E. Perlstein, Corinna Lothar Metcalf, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for N.L.R.B.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and JONES, District Judge.[*]

LAY, Chief Judge.

The Arlington Hotel Company petitions for review of an order entered by the National Labor Relations Board (NLRB or Board) requiring the Hotel to bargain with the Southern Missouri-Arkansas District Council, International Ladies' Garment Workers' Union (Union). The Hotel asks that we set aside the Board's order and require a new election. Alternatively, the Hotel requests that we order the NLRB's Regional Director to conduct a hearing about the objections the Hotel raised to the first election. As grounds to set the order aside, the Hotel contends that (1) the Regional Director designated an inappropriate bargaining unit; and (2) the Union engaged in campaign misconduct that warranted setting aside the election. For the reasons set forth below, we enforce the Board's order.

The Arlington Hotel Company operates a 500-room resort hotel in Hot Springs, Arkansas, and employs approximately 300 persons. On March 19, 1981, the Union filed a petition with the NLRB seeking certification as the exclusive bargaining representative of various employees. The Union sought to exclude from the bargaining unit front desk personnel, clericals, guest services hostesses, and retail store clerks. The

[*] John B. Jones, United States District Judge for the District of South Dakota, sitting by designation.

Hotel contended the only appropriate unit included all hotel employees, except those statutorily excluded.[1] Following a hearing held to determine the scope of the appropriate bargaining unit, the NLRB's Regional Director decided that an appropriate unit would include guest services hostesses and retail store clerks and exclude front desk personnel and clericals.[2] The Hotel's request for review of the Regional Director's unit determination was denied by the Board. An election in the unit described was held on May 29, 1981, resulting in 141 votes for the Union, 126 against, and 19 ballots challenged, a number sufficient to affect the results of the election. The Hotel filed timely objections to conduct affecting the results of the election and the Regional Director overruled the objections in their entirety. The Regional Director further sustained challenges to six ballots, leaving the remaining challenges no longer determinative of the election, and certified the Union as the exclusive bargaining representative of the unit employees. The Hotel's petition for Board review was denied.

Thereafter, the Union requested the Hotel to recognize and bargain collectively with it. The Hotel stated that it refused to recognize or bargain with the Union and an unfair labor practice charge was filed. On December 2, 1981, the General Counsel issued a complaint against the Hotel, alleging that it had refused to bargain in violation of the National Labor Relations Act (Act) § 8(a)(1), (5), 29 U.S.C. § 158(a)(1), (5) (1976). On February 5, 1982, the General Counsel filed a motion for summary judg-

ment. On May 18, 1982, the Board found that all issues raised by the Hotel in the unfair labor practice proceeding regarding the Union's conduct and the unit determination had been presented in the underlying representation proceeding and granted the motion for summary judgment. The Board found the Hotel to be engaging in unfair labor practices and ordered it to bargain with the Union. *Arlington Hotel Co.,* 261 N.L.R.B. No. 126 (1982). The Hotel petitions for review of that order.[3]

## I. *Determination of Appropriate Unit.*

■ This court has jurisdiction to review an order of the NLRB pursuant to section 10(f) of the Act, 29 U.S.C. § 160(f) (1976). According to section 10(f), the Board's findings of fact are to be considered conclusive "if supported by substantial evidence on the record considered as a whole." *See NLRB v. Van Gorp Corp.,* 615 F.2d 759, 760 (8th Cir.1980); *NLRB v. Target Stores, Inc.,* 547 F.2d 421, 423 (8th Cir.1977) ("The Board's choice of an appropriate unit should be upheld if there is substantial evidence upon the record as a whole to support the Board's determination and unless the Board acted arbitrarily or capriciously."); *see also South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers,* 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976) (per curiam) ("selection of an appropriate bargaining unit lies largely within the discretion of the Board, whose decision, 'if not final, is rarely to be disturbed,' *Packard Motor Co. v. NLRB,* 330

---

1. Guards and supervisors are excluded by statute. *See* National Labor Relations Act §§ 2(3) & 9(b)(3), 29 U.S.C. §§ 152(3) & 159(b)(3) (1976).

2. The following employees were declared to constitute an appropriate unit:
   All full time and regular part-time employees at the Employer's Hot Springs, Arkansas hotel, including guest service hostesses, drugstore and newsstand employees, excluding room clerks, front desk cashiers, PBX operators, reservation clerks, auditing clerks, and clerk/typists, conference sales employees, convention sales employees, publicity clerk, managerial employees, confidential employ-

ees, watchmen, guards and supervisors as defined in the Act.

3. To obtain judicial review of representation proceedings, the Hotel must refuse to bargain with the Union and then litigate the resulting compulsory bargaining order. *See NLRB v. Skelly Oil Co.,* 473 F.2d 1079, 1082 n. 3 (8th Cir.1973). Pursuant to section 9(d) of the Act, 29 U.S.C. § 159(d) (1976), once the Board's bargaining order is before the court, the underlying representation proceedings may also be reviewed. *See Bauer Welding & Metal Fabricators, Inc. v. NLRB,* 676 F.2d 314, 316 (8th Cir.1982); *NLRB v. Van Gorp Corp.,* 615 F.2d 759, 760 (8th Cir.1980).

U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947)").

The Hotel argues that under the Board's own decisions, the *only* appropriate bargaining unit is a hotel-wide unit. *Arlington Hotel Co.,* 126 N.L.R.B. 400, 404 (1960). The original *Arlington Hotel* case established a per se rule that "in the hotel industry, all operating personnel have such a high degree of functional intergration [sic] and mutuality of interests that they should be grouped together for collective-bargaining purposes." *Id.* (footnote omitted). The Hotel acknowledges that the Board subsequently overruled this per se rule in 1966, but contends that the facts as they still exist at the Arlington Hotel warrant a hotel-wide unit. The Hotel further contends that the Board has consistently held that hotel clericals must be included in the unit if they share a "community of interests" with the other operating personnel. *E.g., Island Holidays, Ltd., d/b/a Coco Palms Resort Hotel,* 201 N.L.R.B. 522, 523 (1973). The Hotel complains that the Board has arbitrarily departed from its own precedent in the composition of this unit, by excluding front desk employees and clericals. We must disagree.

A hearing was conducted on the scope of an appropriate unit and the Regional Director made detailed findings about the nature of the unit. The Regional Director concluded that the front desk clerks and clericals did not have such a high degree of integration of functions so as to *require* their inclusion in a single unit. The personnel excluded are generally "white collar" workers, as opposed to the "blue collar" workers included in the unit. The excluded employees work in different parts of the Hotel and are separately supervised. There is little interchange between the included manual employees and the excluded clericals. Contrary to the Hotel's position, the Board has followed its own precedent by limiting the unit to manual employees. *See, e.g., Howard Johnson Co.,* 250 N.L.R.B. 1412, 1413, 105 L.R.R.M. (BNA) 1072 (1980); *Lane Avenue Property, Ltd., d/b/a Ramada Inn West,* 225 N.L.R.B. 1279, 1280 (1976).

We conclude that although the unit found by the Board is not the only possible unit, it is an appropriate unit and that is all that is required. *See* National Labor Relations Act, § 9(a), 29 U.S.C. § 159(a) (1976). The Hotel has not shown that the unit is totally inappropriate or that the Board abused its discretion in designating this unit. *See NLRB v. Target Stores, Inc.,* 547 F.2d at 423.

## II. *Campaign Misconduct.*

The Hotel next contends that the Union or its agents engaged in campaign misconduct that should have caused the election to be set aside, and that the Board erred in overruling the Hotel's election objections.

The Hotel first complains that the Union made several misrepresentations regarding applicable law and facts. Specifically, the Hotel contends that the Union misrepresented NLRB law, process, and procedure by (1) providing handouts stating that the federal government supported union organizing; (2) stating in a handout that the Hotel would not recall strikers because it did not want them to vote; (3) circulating a rumor that if the Union won the election all permanently replaced strikers would be recalled; (4) providing handouts after the election stating that the Hotel had been found guilty of unfair labor practices when a complaint had been issued but no determination had been made; and (5) misinforming employees about the Union's suggested bargaining unit. The Regional Director evaluated each of these objections pursuant to the Board's standards enunciated in *Hollywood Ceramics Co.,* 140 N.L.R.B. 221 (1962):

> We believe that an election should be set aside only where there has been a misrepresentation or other similar campaign trickery, which involves a substantial departure from the truth, at a time which prevents the other party or parties from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election.

*Id.* at 224 (footnote omitted).

This standard has been expressly approved by this court. *See, e.g., NLRB v. Modine*

*Manufacturing Co.,* 500 F.2d 914, 915–16 (8th Cir.1974). The Regional Director concluded that the misrepresentations were within the bounds of permissible campaign propaganda or were not the type of misstatements likely to affect the outcome of an election or that the Hotel was able to make an effective reply.

■ We recognize that the Board has broad discretion in the conduct and supervision of representation elections. The Board apparently concluded that the Hotel did not meet its heavy burden of proving that the fairness of the election had been prejudiced by these misrepresentations. We are satisfied the Board's determination was supported by substantial evidence. *See NLRB v. Target Stores, Inc.,* 547 F.2d at 424; *LaCrescent Constant Care Center, Inc. v. NLRB,* 510 F.2d 1319, 1321 (8th Cir.1975); *NLRB v. Griffith Oldsmobile, Inc.,* 455 F.2d 867, 871 (8th Cir.1972).[4]

■ The Hotel next contends that the Union misrepresented material facts by (1) circulating a rumor that the Hotel's general manager Horst Fischer had said that if the Union won the election the Hotel would close down; (2) circulating a rumor that if the Hotel won the election it would terminate recalled strikers; (3) representing to employees that the Union had no initiation fees or fines; and (4) using Kenneth Adair, a Hot Springs City Alderman, to speak on behalf of the Union. Adair sent a letter dated May 26, 1981, on City of Hot Springs' stationery to all employees eligible to vote, encouraging them to vote "yes" and telling them that as a former Hotel employee he knew how badly workers were treated. The Hotel complains that this letter falsely

indicated to the employees that the City supported the Union, and that Adair did not know how employees were treated because he had worked at the Hotel 30 years ago. The Regional Director investigated the Hotel's objections and concluded that the misrepresentations were insubstantial and that the Hotel was not precluded from making an effective reply. With regard to Adair's letter, the Regional Director concluded that the Hotel knew over a month prior to the election that Adair supported the Union and made no attempt to point out to employees that Adair was not speaking on behalf of the City. Further, a front-page newspaper article quoting representatives of the Hotel was printed on the same day the letter was received by employees and that article neutralized any effect the letter might have had on the election. The Regional Director overruled the objections and we find that determination supported by substantial evidence on the record when considered as a whole.[5]

■ The Hotel's final contention regarding campaign misconduct relates to the alleged injection of racial prejudice and hatred into the campaign. Kenneth Adair published a minority-based newspaper, *The Arkansas Citizen.* In a January 1981 article published in his newspaper before the filing of the Union's election petition, Adair commented that Hotel general manager Horst Fischer "displayed an ego equal to Adolph Hitler." Adair made a second Hitler reference in a newspaper article published in the April 25 edition of *The Sentinel-Record,* another local paper. He is quoted there as having told employees at a rally that Fischer "is running the hotel like a Hitler." Fi-

---

**4.** After the Board's May 18, 1982, order was entered in this case, the Board overruled *Hollywood Ceramics* in *Midland National Life Insurance Co.,* 263 N.L.R.B. No. 24, 110 L.R.R.M. (BNA) 1489, 1490 (1982). *Midland* holds that elections will no longer be set aside solely on the basis of misleading campaign statements without a further inquiry into the manner in which the statement was made. It is not necessary for us to decide whether the *Midland* standard should be applied in this case because of our holding that the election should not be

set aside even under the more rigorous *Hollywood Ceramics* standard.

**5.** The Hotel also complains of threats made to an employee by a single union organizer. These threats amounted to two separate statements made by one individual several weeks apart. The Regional Director concluded that the first remark was an isolated and ambiguous statement, the second was not coercive, and that the Hotel's objections were without merit. We find these conclusions supported by the record.

nally, in a letter mailed by the Union on May 26, the Union refers several times to the "Arlington slave ship." The Hotel complains that these remarks had no place in an election campaign and were solely appeals to racial prejudice.

The Hotel contends that appeals to prejudice should be evaluated in light of the Board's standards set out in *Sewell Manufacturing Co.,* 138 N.L.R.B. 66 (1962). In *Sewell* the Board set aside an election and stated that a party making use of a racial message had the burden of establishing that the message was "truthful and germane." *Id.* at 72. The Hotel contends that the Regional Director did not make the Union meet its burden. The Hotel also relies on cases from three other circuits: *NLRB v. Katz,* 701 F.2d 703, 705–08 (7th Cir.1983) (Catholic priest made remarks at union meeting about the Employer being Jewish and rich while the employees were poor; other ethnic/religious references made during campaign; court found religious slurs not relevant to campaign and denied enforcement of Board's order); *NLRB v. Silverman's Men's Wear, Inc.,* 656 F.2d 53, 57–59 (3d Cir.1981) (Union officer called Company officer a "stingy Jew" at a Union meeting; court found the religious slur made a prima facie case requiring the Board to hold hearing on the Company's objection); *Schneider Mills, Inc. v. NLRB,* 390 F.2d 375, 379–80 (4th Cir.1968) (Union handbill depicted Company president as inhuman and compared him to the "mad man" Hitler; court concluded statements were highly inflammatory and not germane). We think these cases are distinguishable from the situation presented here.

The Hitler and slave ship references at issue were found by the Regional Director to fall outside the *Sewell* standard. *Sewell* does not require that all racial references be excluded from a campaign, but is concerned with appeals to animosity and prejudice. The slave ship reference, although having racial overtones, was directed at economic, not racial, oppression. The Hotel replied to the slave ship reference with statements about increased employees' benefits and improved conditions. The Union's primary

contention in the campaign was directed at securing higher wages and not at setting one race against another. The Union's isolated remarks about slave ships were not the central theme of its campaign. *See Peerless of America, Inc. v. NLRB,* 576 F.2d 119, 125 (7th Cir.1978). The first Hitler reference was made prior to the filing of the election petition and cannot be considered as grounds to set aside the election. The second Hitler reference made one month before the election, "running the hotel like a Hitler," can be construed as a reference to a tyrant or a dictator. The reference has economic, rather than racial or ethnic, significance. In *Schneider Mills* the Hitler comparison was made in conjunction with serious specific accusations against the employer. There is nothing like that here. There is no showing of inflammatory effect or that the employees were misled by this single comment. Although we do not condone a reference to Hitler in an election campaign, we think there is substantial evidence on the record considered as a whole to support the Board's determination that the election should not be set aside.

III. *Necessity of a Hearing.*

■ The Hotel urges that at a minimum this court must remand to the Board for a hearing. We do not think that is necessary. The Hotel has not raised "substantial and material factual issues" that would require a post-election hearing. *See NLRB v. Griffith Oldsmobile, Inc.,* 455 F.2d at 868–69. The Hotel has presented its evidence to the Regional Director and the evidence was carefully considered. It does not contend the facts require more investigation or that it has additional evidence to offer. A hearing is not required.

Accordingly, the order of the Board is enforced.