NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GRIFFITH OLDSMOBILE, INC.,
Respondent.

No. 71–1100.

United States Court of Appeals,
Eighth Circuit.

Feb. 22, 1972.

Arnold Ordman, Gen. Counsel; Dominick L. Manoli, Associate Gen. Counsel; Marcel Mallet-Prevost, Asst. Gen. Counsel; Charles N. Steele and Steven R. Semler, Attys., National Labor Relations Board, Washington, D. C., filed appendix and brief for petitioner.

William Alexander, Jr., Atlanta, Ga., filed brief for respondent.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this Court for enforcement of its order requiring Griffith Oldsmobile, Inc., to bargain with District Lodge 71, I.A.M., AFL–CIO. The Board's decision and order are reported at 184 N.L.R.B. No. 85, 74 L.R.R.M. 1702 (1970).

On May 13, 1969, the Union won a Board-conducted election by a six-to-four vote. Thereafter, Griffith filed objections to the conduct of the election, alleging that lack of election secrecy and improper pre-election threats had affected the results of the balloting.

The Board's Regional Director conducted an administrative investigation of Griffith's objections and afforded the parties an opportunity to submit evidence.

On January 6, 1970, the Director found the objections to be without merit. He recommended that the Board "overrule the Employer's objections in their entirety and without hearing

* * * and certify the [Union] as the exclusive bargaining representative of all employees in the unit."

The Company filed exceptions to the Director's report and requested that the Board either set aside the election or order a hearing. The Board found that the Company raised no material or substantive issues of fact or law warranting reversal of the Director. It certified the Union as the bargaining agent.

Thereafter, the Union requested Griffith to bargain. Griffith refused. The Union filed unfair labor practice charges. On March 11, 1970, a complaint was issued charging the Company with violations of § 8(a) (1) and (5) of the National Labor Relations Act. Griffith admitted the refusal to bargain, but contended that the Board had erred in certifying the Union and that it was not, therefore, obligated to bargain. Griffith again relied on the argument that lack of election secrecy and improper pre-election threats had affected the results of the election. The General Counsel moved for summary judgment on the grounds that the issues raised by Griffith had been fully litigated and determined adversely to the Company in the representation case. The Examiner granted summary judgment and the Board affirmed. This proceeding followed.

Griffith argues on this appeal that, by failing to grant a hearing on the Company's objections to the election at some stage of the proceedings, the Board violated both its own regulations and the due process clause of the United States Constitution. Griffith argues further that, in any event, the Board's findings are not supported by substantial evidence on the record as a whole.

Board regulations permit a Regional Director to determine the validity of objections to an election by an administrative investigation, unless it appears to the Regional Director that substantial and material factual issues exist which can be resolved only by a hearing. Furthermore, once an issue is resolved by the Board in a representation proceeding under its Section 9 powers, the Board is not ordinarily required, absent newly discovered evidence, to reconsider the same issue and evidence in an ensuing unfair labor practice proceeding under Section 10 of the Act. Finally, a decision of a Regional Director, if not set aside by the Board, is entitled to the same weight in subsequent appeals as a Board determination.[1]

The initial question we must consider is whether Griffith, in its objections to the election, raised substantial and material factual issues necessitating a hearing.

To raise such issues,

" * * * [i]t is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing. The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. * * *

1. The leading case on this point in our Circuit is N.L.R.B. v. DIT–MCO, 428 F.2d 775 (8th Cir. 1970). Compare N.L.R.B. v. Lord Baltimore Press, Inc., 370 F.2d 397 (8th Cir. 1966), in which this Court, as a condition to enforcing a bargaining order, required that the Board conduct a hearing on employer allegations that union misconduct had significant impact on an election. While we did not expressly state that we required the hearing because there were substantial and material factual issues which could be resolved only by a hearing, this is the import of that case. See, Magnesium Casting Co. v. N.L.R.B., 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed.2d 735 (1971); N.L.R.B. v. Moran Oil Producing and Drilling Corporation, 432 F.2d 746 (10th Cir. 1970), cert. denied, 401 U.S. 941, 91 S.Ct. 941, 28 L.Ed.2d 229 (1971); N.L.R.B. v. Golden Age Beverage Company, 415 F.2d 26 (5th Cir. 1969); N.L.R.B. v. Tennessee Packers, Inc., Frosty Morn Division, 379 F.2d 172 (6th Cir. 1967), cert. denied, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1968); 29 C.F.R. § 102.67(f); 29 C.F.R. § 102.69(c). Cf. N.L.R.B. v. Addison Shoe Corporation, 450 F.2d 115 (8th Cir. 1971).

Mere disagreement with the Regional Director's reasoning and conclusions do not raise 'substantial and material factual issues.' This is not to say that a party cannot except to the inferences and conclusions drawn by the Regional Director, but that such disagreement, in itself, cannot be the basis for demanding a hearing. To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. The Board is entitled to rely on the report of the Regional Director in the absence of specific assertions of error, substantiated by offers of proof.

"The purpose behind the rule which requires a hearing only when 'substantial and material factual issues' are raised is to avoid lengthy and protracted proceedings, and eliminate unnecessary delays in certifying the results of an election. If a hearing is required to be held on all exceptions to an election or report of a Regional Director, it would unduly lengthen and prolong labor unrest, contrary to the very purposes of the National Labor Relations Act. * * *"

N.L.R.B. v. Tennessee Packers, Inc., Frosty Morn Division, 379 F.2d 172, at 178 (6th Cir.), cert. denied, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967). See, Baumritter Corporation v. N.L.R.B., 386 F.2d 117 (1st Cir. 1967). Cf. N.L.R.B. v. Difco Laboratories, Inc., 389 F.2d 663 (6th Cir.), cert. denied, 393 U.S. 828, 89 S.Ct. 91, 21 L.Ed.2d 98 (1968).

■ Here, the only witnesses to the alleged pre-election threats were those brought forward by the Company. The sole question for the Director was, therefore, what inferences and conclusions could be drawn from their testimony. By its objections, Griffith did nothing more than question the interpretation and inferences placed upon the facts by the Regional Director. Thus, the Board was wholly within its rights in refusing to grant a hearing on the objections, either initially or at the time the unfair labor practice charges were heard.

Conflicting evidence was presented to the Regional Director with respect to the lack of election secrecy, but Griffith's testimony on this point was so insubstantial that the Regional Director properly found that no real factual question was raised.[2]

We are left, then, with the question of whether there is substantial evidence on the record as a whole to support the Board's findings.

■ Without question, the Board properly found that the secrecy of the ballot had not been compromised.

We must, however, consider in some detail Griffith's allegation that Union adherents engaged in a systematic course of coercion which made a fair election impossible.

In support of this contention, Griffith produced an employee who testified that, approximately a week and a half before the election, he was approached by three unidentified men. One of the men gave the employee a union card and stated that the employee had better sign it; that if he didn't want to be fired, he had better sign a card and give the man $10.00; that if the employee knew what was good for him, he would join the Union; and that if he did not sign now, it would cost him $250 to join at a later date—if the Union members would even permit him to join.

The employee further testified that a few days later, he was again stopped by three men, one of whom had been involved in the preceding incident. The

2. Compare, N.L.R.B. v. Commercial Letter, Inc., 455 F.2d 109 (8th Cir. 1972). In that case, the Board sought a bargaining order. We refused to grant one because we found that substantial and material factual issues were raised at the post-election stage and no hearing had ever been held on these issues.

men asked the employee if he wanted to give them $10.00 and sign the card. They further told him that if he did not do so, he would no longer be working in the automobile business in Kansas City, and that it would not be healthy for him if he did not join the Union. The employee was unable to identify any of the men.

A second employee stated that he received a telephone call from an unidentified man who cursed him and stated that if he did not join the Union, he would not be able to work in the automobile business in Kansas City.

Both employees testified that other employees on the job frequently asked them to join, and that these other employees stated that if the two employees didn't join now, they might later have to pay a higher initiation fee.

On the basis of the above facts, the Regional Director found:

"* * * [T]here is no evidence whatever that the Petitioner was responsible for the actions and statements of the three men involved, none of whom has been identified. Similarly, there is no identification of the individual who made the telephone call mentioned by the second employee. Accordingly, these incidents cannot be attributed to the Petitioner. By the same token it cannot be concluded that these three incidents, giving full credence to the statements of the two salesmen involved, amounted to a 'systematic course of coercion' as claimed by the Employer which would create such a general atmosphere of fear requiring or warranting the setting aside of this election. As to the alleged loss of jobs, it is clear in the context of the organizational cam-

paign and the Petitioner's statements concerning permissible union security provisions that a contractual union shop arrangement would be permissible in the location here involved. This objection should be overruled."

▌ The Board properly held that the statements with respect to initiation fees and the statement that Union membership would be a requirement for holding a job were not grounds for voiding the election. N.L.R.B. v. DIT–MCO, 428 F.2d 775 (8th Cir. 1970).

▌ The more serious question is whether the election should be voided because an unidentified man told one of the employees that "it would not be healthy for the employee if he did not join the Union." In this connection, the Board has recognized that neither unions nor employers can prevent misdeeds or misstatements by persons over whom they have no control, and that a rule giving the same weight to conduct by third persons as to conduct attributable to the parties would substantially diminish the possibility of obtaining quick and conclusive election results.[3] Nevertheless, representation elections will be set aside where nonparty misconduct has taken place and such conduct is shown to have created "an atmosphere of fear and reprisal such as to render a free expression of choice impossible." Manning, Maxwell & Moore, Incorporated v. N.L.R.B., 324 F.2d 857, at 858 (5th Cir. 1963).

▌ After carefully reviewing the record, we find substantial evidence on the record as a whole to support the Board's finding that no atmosphere of fear or reprisal, such as to render a free expression of choice impossible, had been created by the alleged remarks.

3. N.L.R.B. v. Bill's Institutional Commissary Corp., 418 F.2d 405, 406 (5th Cir. 1969); N.L.R.B. v. MYCA Products Division of Kane Company, 352 F.2d 511 (6th Cir. 1965); Shoreline Enterprises of America, Inc. v. N.L.R.B., 262 F.2d 933 (5th Cir. 1959); National Labor Rel. Bd. v. Vulcan Furniture Mfg. Corp., 214 F.2d 369, 372 (5th Cir.), cert. denied, 348 U.S. 873, 75 S.Ct. 109, 99 L.Ed. 687 (1954); Orleans Manufacturing Company, 120 N.L.R.B. 630, 42 L.R.R.M. 1016 (1958).

The Regional Director interviewed the employees to whom the threats had been made and permitted them to make full statements. The record does not establish that either of the employees were intimidated by the remarks nor does it indicate that they communicated the threats to other employees. Both employees stated that they decided to sign Union cards after they had been approached; but they did not give "fear" or "apprehension" as their reason for doing so, nor did they state that they had voted for the Union in the election. *Cf.*, N.L.R.B. v. Tampa Crown Distributors, Inc., 272 F.2d 470 (5th Cir. 1959).

Had the alleged threats been made by Union agents or adherents, we would reach a different result. See, Home Town Foods, Inc. v. N.L.R.B., 379 F.2d 241 (5th Cir. 1967). But under the circumstances here, the employer has not carried its heavy burden of establishing that the election was not fair. Shoreline Enterprises of America, Inc. v. N.L.R.B., 262 F.2d 933 (5th Cir. 1959).

Griffith cites several cases to support its contention that the threats justified setting the election aside. We have distinguished *Tampa Crown* and *Home Town Foods* above. Of the remaining cases Griffith relies on, Diamond State Poultry Co., Inc., 107 N.L.R.B. 3, 33 L.R.R.M. 1043 (1953), involved flagrant threats to employees by three unidentified men on company premises on election day.[4] Neither Universal Manufacturing Corp. of Mississippi, 156 N.L.R.B. 1459, 61 L.R.R.M. 1258 (1966), nor James Lees and Sons Company, 130 N.L.R.B. 290, 47 L.R.R.M. 1285 (1961), are in point.

The Board's order is enforced.

4. "* * * About 10:30 a. m. on the day of the election, the superintendent found there strangers talking to some of the employees. One was wielding a knife and telling an employee to vote the right way or it would not be good for them. When the superintendent asked what the strangers were doing, they cursed him and told him it was none of his business and that he should leave or he would get hurt.

"* * * They were subsequently identified as three employees of another poultry company where the CIO had won a Board run-off election the day before."

Diamond State Poultry Co., Inc., 107 N.L.R.B. 3, 33 L.R.R.M. 1043 (1953).