NABISCO, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 83–2310.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1984.

Decided July 12, 1984.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Allison W. Brown, Jr., John Rubin, Attys., N.L.R.B., Washington, D.C., for respondent.

Victor M. Comolli, McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P.R., for petitioner.

Before LAY, Chief Judge, and HEANEY and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Nabisco, Inc., petitions this Court for review of a final order of the National Labor Relations Board compelling it, *inter alia*, to begin collective bargaining negotiations with the Union de Tronquistas de Puerto Rico, Local 901, associated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The Board cross-petitions for enforcement of its order.[1]

The pivotal issue before us is whether petitioner's allegations of pre-election misconduct by supporters of the Union and of procedural irregularity at the polling places establish a prima facie case for setting aside the election. Petitioner urges that the Board's Acting Regional Director (ARD) erred in failing to grant petitioner an evidentiary hearing on these allegations. For the reasons discussed below, we reject petitioner's claims and affirm the Board's order.

## I. *Facts and Procedural History*

On June 21, 1982 the Union filed a petition with the Board's ARD seeking certification as the bargaining representative for all salesmen and salesmen trainees employed by petitioner at its facilities in Hato Tejas, Caguas, and Mayaguez, Puerto Rico. The Board then conducted a secret-ballot election on July 30 which the Union won by a vote of 21 to 17 with no challenged ballots. On August 6 petitioner filed its objections[2] with the ARD, who conducted an investigation during which all parties were afforded an opportunity to submit evidence. The ARD's report recommended that the objections be overruled and that the Union be certified. The Board adopted the ARD's recommendations and on December 15 certified the Union.

On or about December 21 the Union requested petitioner to bargain with it. When petitioner repeatedly refused to do so, the Union filed with the Board an unfair labor practices complaint under 29 U.S.C. § 158(a)(1), (5). Petitioner responded by reasserting its objections to the election. The General Counsel then moved for summary judgment on the ground that petitioner had already litigated and lost on these objections in the representation proceeding. In opposing the motion for summary judgment, petitioner again repeated its objections and cited further the ARD's failure to hold a hearing on its objections. On August 26, 1983 the Board granted the General Counsel's motion for summary judgment, finding that petitioner had not offered any new evidence that would require the Board to re-examine the decision it made at the certification stage. Petitioner now presents the same objections for our review.

---

1. Jurisdiction over both petition and cross-petition is proper under 29 U.S.C. § 160(e) and (f). The Board's order is reported at 267 N.L.R.B. No. 83 (1983).

2. These are discussed in parts III and IV below. Petitioner originally submitted three objections but apparently has abandoned one of them—a misrepresentation claim—since it was neither briefed nor presented at oral argument before this Court.

## II. *Appellate Review of a Board Order*

The scope of our review in this kind of case is a limited one. The Board may exercise a large measure of informed discretion and a court must accept its determinations so long as they have warrant in the record and a reasonable basis in law. *NLRB v. Chem Fab Corp.*, 691 F.2d 1252, 1256 (8th Cir.1982). The standard for determining whether the Board has abused its discretion is well-settled in this circuit. The Board need not conduct a hearing on election objections unless the objecting party has made a prima facie showing of substantial and material factual issues which, if true, warrant setting aside the election. *Beaird-Poulan Division, Emerson Electric Co. v. NLRB*, 571 F.2d 432, 434 (8th Cir.1978).

Mere disagreement with the ARD's reasoning and conclusions, however, does not raise substantial and material factual issues. Rather, the objecting party must make an offer of proof to support findings contrary to those of the ARD. *NLRB v. Griffith Oldsmobile, Inc.*, 455 F.2d 867, 869 (8th Cir.1972). The Board is entitled to rely on the ARD's report in the absence of specific assertions of error substantiated by offers of proof.[3] *Id.* We now consider whether the Board abused its discretion in overruling petitioner's objections.

## III. *Atmosphere of Fear and Coercion*

Petitioner presents affidavits alleging that an atmosphere of fear and coercion destroyed the "laboratory conditions" required during representation elections. A certain measure of bad feeling and even hostile behavior is probably inevitable in any hotly contested election. For an election to be set aside, however, it must be shown that an atmosphere of fear and coercion has vitiated free choice. *See NLRB v. Monark Boat Co.*, 713 F.2d 355, 357 (8th Cir.1983) (employee advocating crossing picket line told "it has been known to happen where someone crossing a picket line

got bricks and clubs up side their heads"); *NLRB v. Southern Paper Box Co.*, 473 F.2d 208 (8th Cir.1973) (employees threatened with loss of jobs, property damage, and physical violence unless they continued to support the union); *NLRB v. Van Gorp Corp.*, 615 F.2d 759, 763 (8th Cir.1980) (employee threatened by union supporter that opposition would lead to "serious trouble" shortly thereafter physically assaulted by another union supporter).

Petitioner's affidavits allege the following incidents:

(1) About a week before the July 30 election, employee Victor Rivera chauffeured petitioner's general manager to the Mayaguez airport. Later that week Rivera received a phone call at his office in which an anonymous speaker said "You've turned into a Judas" and then hung up.

(2) On July 28 employee Jose Batista circulated a letter among his fellow salesmen urging them to vote against the Union. That night an unidentified party hurled two rocks at his home and shouted "You betrayed me" before speeding away in a pickup truck. The rocks left marks in the paint.

(3) Employee Anthony Rivera attended the July 28 meeting, urging his co-workers to support petitioner. He also congratulated Batista for circulating his letter. That night he received an anonymous phone call stating "Your talking against us hurt us. Your name is being mentioned by everyone on the street, and your co-workers aren't going to be the same with you as before."

Although we are seriously troubled by these incidents, and particularly so by the stoning of Jose Batista's home, we cannot say that these acts add up to a pattern of improper conduct requiring an evidentiary hearing. It is not alleged that any of the employees involved were intimidated by these incidents, nor is it alleged that the Union was responsible for them. Our conclusion in this regard, however, should not

---

**3.** "If a hearing is required to be held on all exceptions to an election or report of a Regional Director, it would unduly lengthen and prolong labor unrest, contrary to the very purposes of the National Labor Relations Act." 455 F.2d at 869.

be read as condoning conduct of this kind, and we wish to make it clear that both the employer and the union have a duty to take all reasonable precautions to ensure that employee free choice is not subverted by violence or the threat of violence or other reprisal. Upon a sufficient showing that employee freedom to exercise meaningful choice has been undermined, by whatever means, we are prepared to set aside the results of the election or, at minimum, to order that the Board hold an evidentiary hearing.

■ Petitioner also alleges that about two months before the election employee Justo Batista signed a union card after several of his co-workers told him the Union would otherwise fire him if it won the election. Although threats of job loss are often contributory elements to an atmosphere of fear and coercion, see, e.g., Van Gorp Corp., supra; NLRB v. Katz, 701 F.2d 703 (7th Cir.1983), we decline to hold that such a threat to only one employee is sufficient to require an evidentiary hearing, especially where the Union won the election by more than one vote and there is no allegation that the threat to Batista was known generally among his fellow employees or had any effect upon their freedom of choice.[4]

We conclude that the ARD did not abuse his discretion in overruling these objections.

## IV. *Procedural Irregularity*

■ Petitioner claims the election ought to be set aside because the Union observers at the two election sites (Mayaguez and Toa Baja) failed to wear their identification badges as required by Board-promulgated rules (Form NLRB–722(10); NLRB Case Handling Manual § 11318.1). We find this contention to be without merit.

■ Certainly the Board must set aside an election when its agent, by failing to follow established procedures for conducting elections, compromises the election's neutrality. *See, e.g., Kerona Plastics Extrusion Co.,* 196 N.L.R.B. 1120 (1972)

(agent's early closing of morning polling site created atmosphere of confusion, bias, and prejudice against employer in afternoon vote casting). It is evident from the affidavits, however, that petitioner does not claim such prejudice. Rather, it urges that any deviation, however slight, is *per se* a ground for invalidation. This is a mistaken view of the law. The test is not whether optimal practices were followed but whether on all the facts the manner in which the election was held raises a reasonable doubt as to its validity. *NLRB v. ARA Services, Inc.,* 717 F.2d 57, 68 (3rd Cir.1983). Clearly, the vague statement by affiants Nieves, Toledo, Rivera, Mercado, and Chaves that they were "confused" by the presence of the unbadged observer at Toa Baja does not raise a reasonable doubt as to the overall fairness of the election. Petitioner's own observer stated that the voting at both sites took place in a completely normal manner and that at Mayaguez "there was no kind of confusion among the voters." Nothing in the affidavits raises a substantial factual issue that the procedural irregularity here in question compromised the integrity of the election.

We conclude that the ARD did not abuse his discretion in overruling this objection.

## V. *Evidentiary Hearing*

According to 29 C.F.R. § 102.69(d) petitioner must be afforded an evidentiary hearing on its objections if the ARD concludes that it has raised substantial and material factual issues concerning the fairness of the election. Because we find that the ARD did not abuse his discretion in finding that no such issues have been raised, it was proper for him to resolve petitioner's objections without holding an evidentiary hearing.

The order of the Board is affirmed.

---

**4.** We note further that Batista does not state    that he voted for the Union.