_____

No. 95-2811
_____

Rosewood Care Center, of          *
Joliet, Inc.,                     *
                                  *
            Petitioner,           * On Petition for Review
                                  * of An Order of the
     v.                           * National Labor Relations Board.
                                  *
National Labor Relations Board,   *
                                  *
            Respondent.       *
                       _____

No. 95-3172
_____

Rosewood Care Center, of          *
Joliet, Inc.,                     *
                                  *
            Respondent,           * On Petition For Enforcement
                                  * of An Order of the
     v.                           * National Labor Relations Board.
                                  *
National Labor Relations Board,   *
                                  *
            Petitioner.       *

_____

          Submitted:  January 11, 1996

            Filed:  May 17, 1996
                       _____

Before BOWMAN and JOHN R. GIBSON, Circuit Judges, and KYLE,[*] District
      Judge.

_____

JOHN R. GIBSON, Circuit Judge.

_____

      *The HONORABLE RICHARD H. KYLE, United States District
Judge for the District of Minnesota, sitting by
designation.

Rosewood Care Center of Joliet, Inc. seeks review of a National Labor Relations Board order requiring it to bargain with the United Food and Commercial Workers Union, Local 1540. Rosewood refused to bargain with the union because it claims that the representation election was tainted by coercive conduct before the election and by unfair election procedures. The NLRB cross-petitions for enforcement. We deny review and grant enforcement.

On March 1, 1994, the union won the representation election by a 26 to 24 vote. After the election Rosewood objected to certification of the union, claiming that coercive conduct by union supporters created an atmosphere of intimidation and that the Board agent who conducted the election did so unfairly.

Rosewood raised three claims of coercive conduct. The first was based on the experience of a supervisory employee, Theresa Nutter, who was not a member of the bargaining unit. The second was based on the experience of a bargaining unit employee, Karen Crawford, who attended a union organizing meeting. Crawford stated in an affidavit that at the meeting a fellow employee named Rochelle called her a vulgar name, accused her of spying, and told her she could not leave the meeting without signing a union card. Crawford said that the union representative at the meeting told her that she did not have to sign a card, but that "signing does not mean we are for or against the union." After the meeting Rochelle remarked to Crawford, "I see you drive a Bronco." Crawford interpreted this as an implied threat; she became afraid to drive her Bronco to work and borrowed other cars so that Rochelle would not recognize her car. The third complaint was that union representatives harassed unit employees by visiting their homes.

Rosewood also challenged the Board agent's actions in conducting the election, because he permitted one employee to vote before the polls opened, after he had refused to accommodate three other employees who could not be at the polls during the assigned

hours.  At the morning pre-election conference, the Rosewood representative mentioned that there were three employees who "had to attend a funeral and [might] not be able to vote at the designated times."  The Board agent said "there was no provision for them to vote any other way."  About ten minutes before the polls opened in the afternoon, employee Bridgette Hayes appeared and asked if she could vote early so she could go to a funeral.  The Rosewood representative and the union representative agreed to permit this, and the Board agent allowed Hayes to vote.  That afternoon, after the polls had closed and the votes had been counted, the three other employees arrived at work.  They spoke to a Rosewood administrator, who told them they were too late to vote.  They did not speak to the Board agent.

Pursuant to 29 C.F.R. § 102.69 (1996), the Regional Director investigated Rosewood's objections.  The Regional Director did not hold a hearing, but rendered her decision based on affidavits gathered in the course of her investigation.

The Regional Director overruled Rosewood's objections.  She concluded that Rosewood made no showing of conduct that would interfere with the employees' free choice in the election.  The Regional Director concluded that the statements made to Theresa Nutter were ambiguous, and at any rate, Nutter was not a member of the bargaining unit.  The Regional Director stated that the incident concerning Karen Crawford at the union meeting did not merit overturning the election because the person who made the improper remarks was a fellow employee, not a union representative.  The Regional Director concluded the incident was isolated and that the union representative intervened appropriately.  The only evidence of the union harassing anyone at home was the affidavit of one man who received two visits from union representatives.  The first representative left when the man told her he was not interested in the union and the second left after being told the man was not at home.

The Regional Director overruled the objection to the Board agent's differing treatment of requests to vote outside the assigned voting hours. The Director based her decision on the distinction that the voter who had been allowed to vote early had actually presented herself at the polls and personally asked permission to vote early. The three others, whom the agent denied special dispensation, did not appear at the polls personally.

Rosewood objected to the Regional Director's report. The Board reviewed the report and adopted the Regional Director's findings and recommendations. Rosewood Care Center, Inc. of Joliet, 315 N.L.R.B. 746 (1994). The Board did not discuss the coercive conduct claims, but did discuss the election procedure. The Board focussed on the distinction that the employee who was allowed to vote early had actually presented herself at the polls, while the pre-election request the Board agent refused was "an abstract question about three employees who might not be able to vote during the stipulated polling hours." Id. at 746. Member Cohen dissented, arguing that the Board agent's actions created the appearance of disparate treatment. He wrote that there were four employees who needed to vote outside the designated hours because of funerals; one was allowed to do so and three were not. Id. at 747. He rejected the majority's reasoning that the three rejected employees did not appear at the polling place; he said that they did not appear because the Board agent had flatly refused to accommodate them. Id. at 748 n.3. The Board certified the election.

Rosewood refused to bargain with the union,[1] the union brought

---

[1] The Board's certification of the election is not subject to judicial review directly. In order to obtain judicial review, Rosewood refused to bargain; in the resulting unfair labor practice proceeding, Rosewood was entitled to assert its objections to the election certification. See N.L.R.B. v. Winburn Tile Mfg. Co., 663 F.2d 44, 47 (8th Cir. 1981); N.L.R.B. v. Van Gorp Corp., 615 F.2d 759, 760 (8th Cir. 1980).

an unfair labor practice charge, and the Board ordered Rosewood to bargain. The Board determined that the record from the certification proceeding was adequate and that there were no new evidentiary issues, citing <u>Pittsburgh Plate Glass Co. v. N.L.R.B.</u>, 313 U.S. 146, 162 (1941). Therefore, on the basis of its earlier decision, it entered summary judgment for the union. <u>Rosewood Care Center of Joliet</u>, 317 N.L.R.B. No. 139 (N.L.R.B. June 26, 1995).

## I.

Rosewood argues that it was entitled to a hearing on its claims of coercive conduct tainting the election. A hearing is necessary if the objecting party makes a prima facie showing of substantial and material facts which, if true, warrant setting aside the election. 29 C.F.R. § 102.69(f) (1996); <u>Nabisco, Inc. v. N.L.R.B.</u>, 738 F.2d 955, 957 (8th Cir. 1984); <u>N.L.R.B. v. Monark Boat Co.</u>, 713 F.2d 355, 356 (8th Cir. 1983); <u>Beaird-Poulan Div., Emerson Elec. Co. v. N.L.R.B.</u>, 571 F.2d 432, 434 (8th Cir. 1978). Where there is a conflict in testimony on a significant issue, a party is entitled to the opportunity to produce evidence that might rebut the other side's evidence, or at least subject the adverse witnesses to the "`cleansing rigors of cross-examination.'" <u>Id.</u> (quoting <u>N.L.R.B. v. Commercial Letter, Inc.</u>, 455 F.2d 109, 113-14 (8th Cir. 1972)). "It is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing. . . . Mere disagreement with the Regional Director's reasoning and conclusions do[es] not raise `substantial and material factual issues.' . . ." <u>Bauer Welding and Metal Fabricators, Inc. v. N.L.R.B.</u>, 676 F.2d 314, 316 (8th Cir. 1982)(quoting <u>N.L.R.B. v. Griffith Oldsmobile, Inc.</u>, 455 F.2d 867, 868-69 (8th Cir. 1972)).

To set aside the election because of coercive conduct, Rosewood must show that an atmosphere of coercion and fear vitiated free choice in the election. <u>Monark Boat Co.</u>, 713 F.2d at 357;

Nabisco, 738 F.2d at 957.  Any incidents of intimidation should be viewed in the aggregate.  Bauer Welding and Metal Fabricators, 676 F.2d at 318.

The Regional Director based her assessment of the incident involving Theresa Nutter on two factors: first, that the alleged threats were ambiguous, and second, that Theresa Nutter was not a member of the bargaining unit.  The statements alleged in Nutter's affidavit do indeed seem to be threatening.  For instance, Nutter said one man told her not to park in the back parking lot because "there was going to be trouble in the back," and that "they were going to have a surprise for Rosewood this weekend."  These statements only become ambiguous when viewed in light of the affidavit of union representative George Holtshlag, who stated that he was only warning employees about slippery conditions in the back parking lot, not threatening them.  The ominous tenor of the comments Nutter reported is at odds with Holtshlag's benign version of events.  It is difficult to accept the Board's harmonization of the two versions; instead, we consider the stories to require the fact finder to make a judgment about whom to believe.  For this, a hearing would be necessary, were the incident significant enough to change the result of the proceeding.  However, the entire incident is irrelevant because Nutter's affidavit did not show that anyone eligible to vote in the election was involved in any way or knew anything about the confrontation. Cf. Bauer Welding, 676 F.2d at 317 (hearing on intimidation issue necessary in part because union threatened supervisors and facts suggested bargaining unit employees knew of threats).  Thus, the incident does not tend to prove that the union denied anyone in the bargaining unit the right to vote his mind.  Rosewood has not borne its burden of coming forward with facts that would make the incident relevant to the material issue here--whether the vote reflected the employees' unconstrained choice.

The incident involving Karen Crawford did involve a bargaining

unit employee, but the Regional Director reported that the event was too isolated to show a general atmosphere of fear and that the union representative at the meeting had responded appropriately to neutralize the aggressive Rochelle.  Significantly, it is Karen Crawford's affidavit which reports the union representative's corrective response (i.e., that Crawford didn't have to sign a union card), and so no credibility determination is necessary.  Improper acts by fellow employees are given less weight than threats sanctioned by the union itself.  See Millard Processing Servs., Inc. v. N.L.R.B., 2 F.3d 258, 261 (8th Cir. 1993), cert. denied, 114 S. Ct. 922 (1994).  Rosewood argues that if a union deputizes employees to solicit signatures on union cards, the employees' actions are imputable to the union, citing Davlan Engineering, Inc., 283 N.L.R.B. 803, 804 (1987).  The facts alleged in Crawford's affidavit do not support an inference that Rochelle was authorized to speak for the union, since the union representative corrected Rochelle's statement that Crawford had to sign a union card.  See generally Millard Processing Servs., Inc., 2 F.3d at 262 (third party's actions attributable to union only if union leads others to believe third party is union's agent).

Third, we can give no weight at all to Rosewood's complaint of "harassing" visits by union representatives, since the only evidence on the issue is one affidavit reporting two very ordinary and proper calls by representatives who left as soon as they were asked to leave.[2]

Since the first and third incidents bear no weight, Rosewood's only evidence to show an atmosphere of fear and coercion is the confrontation between Rochelle and Karen Crawford.  On this record, we cannot say that Rosewood has made a prima facie case for setting

---

[2]The Board also points out that Rosewood waived this third point by failing to assert it before the Board in its exceptions to the Regional Director's report.  See N.L.R.B. v. District 50, United Mine Workers of America, 355 U.S. 453, 464 (1958).

aside the election for improper pre-election conduct.

## II.

Rosewood contends that the Board agent compromised the neutrality of the election by refusing permission for three employees to vote outside the assigned voting hours in order to attend a funeral, while permitting another employee to vote early in order to attend a funeral.

The Board must set aside an election if its agent has indeed compromised the neutrality of the election. Nabisco, 738 F.2d at 958. "[T]he Board is responsible for assuring properly conducted elections and its role in the conduct of elections must not be open to question." Kerona Plastics Extrusion Co., 196 N.L.R.B. 1120 (1972) (quoting New York Telephone Co., 109 N.L.R.B. 788, 790 (1954)). However, the Board has discretion in determining whether to order a new election. See Nabisco, 738 F.2d at 958.

The Board established its rule for late voting in Monte Vista Disposal Co., 307 N.L.R.B. 531 (1992). There, the Board held:

> [A]n employee who arrives at the polling place after the designated polling period ends shall not be entitled to have his or her vote counted, in the absence of extraordinary circumstances, unless the parties agree not to challenge the ballot.

Id. at 533-34 (footnotes omitted). Similarly, the Board's case handling manual instructs that agents should not allow early voting. N.L.R.B. Casehandling Manual (Part Two) § 11318.5 (1989).

In the certification proceeding the Board relied on the distinction that those employees who were not permitted to vote did not present themselves at the polls, whereas the one who was allowed to vote early asked to do so in person. 315 N.L.R.B. at 746-47. The Board also observed that the Rosewood representative

asked only a vague question about whether the three employees could vote outside the voting hours, without giving any concrete indication about when the three could be there.  Id.

Rosewood argues that the distinction between the employee who presented herself at the polls and the three who did not is unfair, because the Board agent's announced refusal to accommodate the three caused them not to appear.  However, the conversation about the three employees happened in the morning, and the same Rosewood agent who was party to that conversation later agreed to let Bridgette Hayes vote before the polls opened in the afternoon.  Rosewood consented to let Hayes vote early.  Allowing Rosewood to use that incident to attack the election would give Rosewood an option to exercise or withhold, according to the result of the election.  This would create a far greater appearance of unfairness than did the Board agent's conduct at the election.  The Board acted within its discretion in refusing to set aside the election.  See Nabisco, 738 F.2d at 958.

We deny review and grant enforcement of the Board's order.

A true copy.

        Attest:

            CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.