_____

Nos. 96-1199/1507
_____

Overnite Transportation Company, *
                                   *
     Petitioner/Cross-Respondent,*
                                   *
     v.                            *
                                   *
Highway, City and Air Freight      *
Drivers, Dockmen, Marine           * Petitions for Review
Officers Association, Dairy        * of an Order of the
Workers, and Helpers Local         * National Labor Relations Board
Union No. 600,                     *
                                   *
     Intervenor.                   *
                                   *
National Labor Relations Board,    *
                                   *
     Respondent/Cross-Petitioner.*

                    _____

          Submitted:  September 13, 1996

             Filed:  January 31, 1997
                    _____

Before McMILLIAN, MAGILL and MORRIS SHEPPARD ARNOLD, Circuit
     Judges.
                    _____

McMILLIAN, Circuit Judge.


     Overnite Transportation Co. (Overnite) petitions this court for
review of a final order[1] of the National Labor Relations Board (Board)
finding that Overnite violated § 8(a)(1), (5) of the National Labor
Relations Act (Act), 29 U.S.C. § 158(a)(1), (5), by refusing to bargain
with the Highway, City and Air Freight Drivers, et al., Local No. 600
(Union), affiliated with the International Brotherhood of Teamsters, AFL-
CIO, following the Union's

_____

     [1]Overnite Transp. Co., 319 N.L.R.B. 964, 1995 WL 785173
(1995).

certification[2] as the exclusive bargaining representative for a unit of employees at Overnite's St. Louis, Missouri, terminal. In its final order, the Board directed Overnite to cease and desist from refusing to bargain with the Union. Overnite now argues that the underlying certification was invalid because the Board failed to hold an evidentiary hearing regarding Overnite's allegations of pre-election misconduct. The Board cross-petitions for enforcement of its order. For the reasons discussed below, we deny the petition for review and enforce the Board's order.

I.    Background

Overnite, a Virginia corporation, is an interstate trucking firm which operates a terminal in St. Louis, Missouri. On January 17, 1995, the Union filed a representation petition with the Board seeking certification as the exclusive bargaining representative of the approximately 105 full-time and regular part-time city drivers, road drivers, and mechanics employed at Overnite's St. Louis terminal. Pursuant to a stipulated election agreement executed by Overnite and the Union, which was subsequently approved by the regional director, the Board conducted a secret-ballot election by eligible Overnite employees on February 28, 1995. The tally of ballots showed that, of the 105 eligible voters, 64 voted for the Union, 37 voted against the Union, and 4 cast challenged ballots.

On March 7, 1995, Overnite filed timely objections, asserting that misconduct by the Union and Union supporters affected the outcome of the election. On April 19, 1995, the regional director recommended that the election be upheld and the Union certified by the Board. Overnite filed timely exceptions to the regional

---

[2]Overnite Transp. Co., No. 14-RC-11501, slip op. at 2 (N.L.R.B. June 16, 1995) (adopting the findings and recommendations of the regional director).

director's report and requested that the Board set aside the election or, in the alternative, hold a hearing to resolve substantial and material factual disputes concerning Overnite's allegations of pre-election misconduct.  On June 16, 1995, the Board adopted the regional director's findings, rejected Overnite's request for a hearing, and certified the Union as the exclusive bargaining representative.

Following its certification, the Union requested that Overnite bargain, but Overnite refused, stating that it intended to contest the validity of the Union's certification.  The Union filed an unfair labor practice charge with the Board, and the regional director, on behalf of the General Counsel, filed a complaint alleging that Overnite had violated § 8(a)(1), (5) of the Act and subsequently moved for summary judgment. Overnite admitted it had refused to bargain, but, as an affirmative defense, challenged the validity of the Union's certification on the ground that Overnite had been improperly denied an evidentiary hearing on its objections to the election.  On December 14, 1995, the Board granted the General Counsel's motion for summary judgment against Overnite and ordered Overnite to cease and desist from the unfair labor practice and bargain with the Union.  Overnite filed the present petition for review, and the Board cross-petitioned for enforcement of its order.  Additionally, the Union intervenes in support of the Board's order.

II.  Discussion

Overnite argues that it established the existence of substantial and material issues of fact regarding acts of pre-election misconduct by the Union or Union supporters and, therefore, it was entitled to an evidentiary hearing on its objections to the election.  "The trier of fact must conduct a hearing to determine the validity of a certification election when there are substantial and material issues of fact."  NLRB v. Monark

<u>Boat Co.</u>, 713 F.2d 355, 356 (8th Cir. 1983) (<u>Monark Boat</u>) (citing <u>NLRB v. Griffith Oldsmobile, Inc.</u>, 455 F.2d 867, 868 (8th Cir. 1972) (<u>Griffith Oldsmobile</u>)).  The applicable regulations state in pertinent part that "[s]uch hearing shall be conducted with respect to those objections or challenges which the regional director concludes raise substantial and material factual issues."  29 C.F.R. § 102.69(d).

An employer's demand for a hearing cannot be based on simple disagreement with the regional director's findings.  The standard for determining whether an evidentiary hearing is warranted has been summarized by this court as follows:

> It is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing.  The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. . . . Mere disagreement with the Regional Director's reasoning and conclusions [does] not raise "substantial and material factual issues."  This is not to say that a party cannot except to the inferences and conclusions drawn by the Regional Director, but that such disagreement, in itself, cannot be the basis for demanding a hearing.  To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director.

<u>Griffith Oldsmobile</u>, 455 F.2d at 868-69 (citations omitted) (quoting <u>NLRB v. Tennessee Packers, Inc.</u>, 379 F.2d 172, 178 (6th Cir.) <u>cert. denied</u>, 389 U.S. 958 (1967)).

Although the Eighth Circuit has not explicitly stated the applicable standard of review for this type of case, previous decisions of this court have been based on <u>de novo</u> review.  <u>See, e.g.</u>, <u>Monark Boat</u>, 713 F.2d at 356-57 (considering <u>de novo</u> whether objections alleging pre-election misconduct created substantial and material factual issues); <u>Beaird-Poulan Div., Emerson Elec. Co. v.</u>

NLRB, 571 F.2d 432, 434 (8th Cir. 1978) (same); Griffith Oldsmobile, 455 F.2d at 868 ("[t]he initial question we must consider is whether [the employer], in its objections to the election, raised substantial and material factual issues necessitating a hearing").[3]  We now turn to Overnite's objections to determine whether they raise substantial and material issues of fact concerning pre-election misconduct sufficient to require an evidentiary hearing.

Overnite first alleged that the Union, by and through its agents and supporters, threatened a known Overnite supporter with bodily harm.  In support of this objection, Overnite presented five employees' sworn affidavits concerning alleged threats of bodily harm.  One affiant stated that an open Union supporter told him "you better get yourself a bullet proof vest" while the affiant was on his way to the polling place.[4] Another affiant stated that the same Union supporter verbally threatened another employee who was talking unfavorably about the Union's proposed pension plan.  In response, the Union submitted a sworn statement from its business

---

[3]By contrast, in Nabisco, Inc. v. NLRB, 738 F.2d 955, 956-58 (8th Cir. 1984), this court held that the regional director did not abuse his discretion in overruling the employer's objection to the election because the employer had failed even to make a prima facie showing of substantial and material factual issues which, if true, would warrant setting aside the election. The regional director found that no issues concerning the fairness of the election had been raised, id. at 958, because, for example, "it [was] not alleged that any of the employees involved were intimidated by [the alleged incidents of pre-election misconduct], nor [was] it alleged that the Union was responsible for them," id. at 957.  Having affirmed the regional director's decision to overrule the employer's objection, this court then went on to hold that the regional director properly declined to hold an evidentiary hearing. Id. at 958.

[4]The affiant allegedly told three other co-workers about the threatening statement by the Union supporter.  One of those co-workers stated in a sworn statement that he had already voted at the time he was told about the threat.  Overnite also submitted the sworn statements of three other employees, each of whom admitted to having heard or heard about the threat after having already voted.

representative that the Union supporter did not have the authority to speak on behalf of the Union, that the Union supporter in question was not employed by the Union, and that the Union did not direct the individual to threaten employees. Based on this evidence, the regional director concluded that the statements were isolated, unaccompanied by physical violence, and not widely disseminated.

Overnite also alleged that the Union, by and through its agents and supporters, vandalized the personal property of Overnite employees. In support of this objection, Overnite submitted the sworn affidavits of three employees who stated that their cars had been damaged in Overnite's parking lot. They further stated that they had ceased wearing pro-Union buttons to work shortly before their vehicles were damaged. In response, the Union's business representative declared in his sworn statement that the Union did not and would not request or authorize any employee to engage in the destruction of property. The regional director found that Overnite had failed to establish a sufficient nexus between the acts of vandalism and the Union. The regional director further stated that the investigation failed to reveal the identity of the person or persons who caused the property damage. Finally, the regional director concluded that the incidents were isolated, unaccompanied by threats, and not attributable to the Union.

Overnite further alleged that the Union, by and through its agents and supporters, unlawfully engaged in surveillance by videotaping and taking photographs of employees at a company-sponsored dinner. In support of this objection, Overnite submitted the sworn affidavits of employees who witnessed Union supporters and individuals wearing Union hats videotaping and taking photographs near the entrance to the dinner. In response, the Union's business representative stated in his sworn statement that no Union official at the dinner had a camera and that no Union official requested anyone to bring a video camera to the dinner.

The regional director noted that, with the exception of one Union supporter, the evidence failed to reveal the identity of the individuals gathered outside the dinner. The regional director also concluded that the mere fact that an individual was wearing a Union hat or shirt was not sufficient to establish agency status and, in any event, the evidence failed to show that the conduct affected a significant number of employees.

The alleged objectionable acts must be analyzed in terms of their cumulative effect. See Monark Boat, 713 F.2d at 358-59. "During a representation election the Board must provide 'a laboratory in which an experiment may be conducted, under conditions as nearly as ideal as possible, to determine the uninhibited desires of the employees.'" Id. at 357 (quoting General Shoe Corp., 77 N.L.R.B. 124, 127 (1948)).

In evaluating claims of election misconduct, the Board and the Eighth Circuit have distinguished between misconduct committed by a union representative or agent and misconduct committed by third parties. Millard Processing Servs., Inc. v. NLRB, 2 F.3d 258, 261 (8th Cir. 1993) (Millard Processing), cert. denied, 510 U.S. 1092 (1994); Monark Boat, 713 F.2d at 360; Pepsi-Cola Bottling Co., 289 N.L.R.B. 736, 1988 WL 213816, at *2 (1988). When the misconduct is directly attributable to the union, the Board will set aside the election when the conduct reasonably tended to interfere with the employees' free and uncoerced choice in the election. Millard Processing, 2 F.3d at 261 (citation omitted). However, with respect to third party conduct, the election will be overturned only if the conduct created an atmosphere of fear and reprisal such as to render a free expression of choice impossible. Id. (citation omitted). Thus, as a threshold matter in the present case, we consider whether the alleged misconduct was committed by Union agents or by third parties.

The regional director found that Overnite failed to show that the threatening statements by the Union supporters, the anonymous

acts of vandalism, or the videotape surveillance were attributable to the Union or its agents. "In determining whether an individual was acting as an agent of a union for purposes of the Act, we apply general common law principles of agency." Id. at 262 (citing NLRB v. International Bhd. of Boilermakers, Local No. 83, 321 F.2d 807, 810 (8th Cir. 1963)). Overnite argues, based upon the circumstantial evidence, that the supporters identified in Overnite's exceptions acted with the apparent authority of the Union and therefore may be considered agents of the Union. This court has previously explained that "[a]pparent authority results from a manifestation by a principal to a third party that reasonably leads a third party to believe that another person is acting as the principal's agent." Millard Processing, 2 F.3d at 262. "To create apparent authority, the principal must either intend to cause the third party to believe that the agent is authorized to act for it, or should realize that its conduct is likely to create such a belief." Id. Upon careful review of the record in the present case, we agree with the regional director that Overnite failed to establish a substantial and material issue of fact as to whether the individuals in question were acting with either the actual or the apparent authority of the Union.[5] Consequently, Overnite can prevail only if it has raised a substantial and material factual issue as to whether an atmosphere of fear and reprisal existed which rendered a free election impossible. Id. at 261.

---

[5]The Board contends that Overnite, in its exceptions filed with the Board, failed to contest the regional director's conclusions with respect to this agency issue. Thus, the Board argues that Overnite is precluded, pursuant to Section 10(e) of the Act, from now asserting its agency argument. Section 10(e) provides, in pertinent part, that "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). Upon review of the exceptions that Overnite filed with the Board, it is clear to this court that Overnite did in fact object to the regional director's findings on this issue. Accordingly, the Board's argument to the contrary is without merit.

Overnite argues that the cumulative effect of the alleged incidents of pre-election misconduct created an atmosphere of fear and reprisal. Overnite relies on this court's decision in Monark Boat to support its position. In Monark Boat, the employer filed objections alleging multiple incidents of pre-election misconduct. 713 F.2d at 356-57. Some of the alleged incidents included the following: (1) a known union supporter threatened vandalism of employees' cars if they crossed the picket line; (2) a known union supporter threatened that employees who crossed the picket line could get struck with bricks and clubs; (3) a union supporter stated that people could "get killed" for crossing the picket line; (4) on the morning of the election, a pro-Union employee stated that employees who refuse to join the union "won't be here very long"; and (5) union supporters had allegedly poisoned a supervisor's dog in order to coerce the supervisor into supporting the union and cooperating with the union as an informant. Id. at 357-358. We held that these alleged incidents, when considered cumulatively, raised an inference of coercion and intimidation sufficient to require a hearing. Id. at 358. In reaching this conclusion, this court specifically noted that 33 of the 185 eligible employees (more than enough to affect the outcome) abstained from voting, which further suggested that many may have been afraid to vote. Id. at 359.

By contrast to the allegations in Monark Boat, the cumulative incidents of pre-election misconduct alleged by Overnite in the present case do not substantially and materially suggest that an atmosphere of fear and reprisal existed so as to render a free election impossible. After careful review of the record, we hold that the allegations concerning threats of bodily harm, even if true, do not create a sufficient inference of coercion and intimidation. The evidence shows that the threat made by a Union supporter to another employee, "you better get yourself a bullet proof vest," was overheard by only two employees who had not yet voted. Every other employee who became aware of the statement had

already voted.  Moreover, all 105 eligible employees in the present case cast ballots at the election, which supports the conclusion that the alleged threats of bodily harm were isolated incidents and not widely known to, or taken seriously by, other employees prior to the election.

As to the acts of vandalism alleged by Overnite, they were anonymous, and no affidavit or other evidence presented in the course of the regional director's investigation identified the individuals responsible for the damage.  Anonymous acts of vandalism ordinarily do not warrant setting aside an election.  For example, in Nabisco, Inc. v. NLRB, 738 F.2d 955, 957 (8th Cir. 1984) (Nabisco), an employee who had urged his co-workers to vote against the union during the campaign, had rocks thrown at his home by an unidentified person who shouted "you betrayed me"; meanwhile, anonymous phone calls were made to two employees who had demonstrated support for the employer.  We held that these acts, although troubling, did not amount to a pattern of pre-election misconduct sufficient to require an evidentiary hearing.  Id. at 957-58.  Similarly, in the present case, the anonymous acts of vandalism cannot be directly attributed to the Union or its supporters and are not sufficiently widespread and threatening to warrant setting aside the election.[6]

Finally, when considered alone or together with the other allegations, Overnite's claim that videotape surveillance was conducted at the company-sponsored dinner does not establish a substantial and material issue as to whether there was an atmosphere of fear and coercion at the time of the election.  The Union scheduled a pro-Union rally to be held outside the dinner

---

[6]We also recognized that, if this court were to impute anonymous acts to one party, such as the Union, without an adequate evidentiary basis, we might provide an incentive for parties who would unlawfully attempt to set aside an election by creating anonymous threatening incidents and then blaming the other party.

facility.  Several Union officials, members, and supporters attended the rally.  Affidavits from employees who attended the dinner stated that a few unknown individuals wearing Union hats and shirts were videotaping and taking photographs.  The regional director's investigation revealed that no Union officer or supporter threatened any retaliation in connection with employees' attendance at the dinner or the videotaping that occurred at that event.  In Millard Processing, 2 F.3d at 263, this court held that the evidence in that case was insufficient to warrant setting aside an election even though an individual, who was wearing a union hat and was positioned near union organizers, videotaped employees at their work site within days before the election.  In that case, we held that third party videotaping for a non-coercive and non-retaliatory purpose was permissible.  Id.[7]  In the present case, the evidence not only fails to reveal the identity of the individuals videotaping the company-sponsored dinner but also fails to show that the conduct affected the outcome of the election.[8]

---

[7]In Millard Processing Servs., Inc. v. NLRB, 2 F.3d 258, 263 (8th Cir. 1993), cert. denied, 510 U.S. 1092 (1994), a local cable producer wearing a union hat videotaped employees entering the plant the day before the election; the union explained that the producer was videotaping the employees for a local cable television program.  Because the videotaping was for a non-coercive purpose, we reasoned that the election should not be set aside.  Id.

[8]On this issue, Overnite relies on Mike Yurosek & Son, Inc., 292 N.L.R.B. 1074, 1989 WL 223861 (1989) (Yurosek), and Pepsi-Cola Bottling Co., 289 N.L.R.B. 736, 1988 WL 213816 (1988) (Pepsi-Cola). In Yurosek, the Board set aside an election where photographs of employees were taken almost daily by union agents and, on one occasion, a representative of the union allegedly stated "[w]e've got it on film; we know who you guys are . . . after the [u]nion wins the election, some of you may not be here."  1989 WL 223861, at *1.  In Pepsi-Cola, the Board set aside an election where the secretary-treasurer of the union videotaped employees as they were being handed union leaflets. 1989 WL 213816, at *1.  By contrast, the evidence in the present case does not indicate that the videotaping was performed by union agents as was the case in both Yurosek and Pepsi-Cola.  Furthermore, the videotaping was not accompanied by coercive statements, as in Yurosek, or conducted during a time that the Union was handing out literature, as in Pepsi-Cola.  See also Nu Skin Int'l, Inc., 307 N.L.R.B. 223, 1992 WL 87489 (1992) (no coercion where the photographing of employees occurred at a union-sponsored picnic).

## III. Conclusion

In sum, we hold that there are no substantial and material issues of fact as to whether the alleged acts of pre-election misconduct were committed by agents of the Union or whether those acts, either individually or cumulatively, created an atmosphere of fear and reprisal so as to render a free election impossible. Thus, we hold that the Board did not err in declining to hold an evidentiary hearing. We deny Overnite's petition for review and enforce the Board's order.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.